Charles Edward THOMAS, Appellant,

v.

**COMMONWEALTH of Kentucky,
Appellee (two cases).**

Court of Appeals of Kentucky.

June 2, 1978.

Discretionary Review Denied
Jan. 9, 1979.

Jack Emory Farley, Public Defender, Commonwealth of Kentucky, Kevin Michael McNally, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Rodney V. Tapp, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and HAYES and WINTERSHEIMER, JJ.

HAYES, Judge.

Appellant, Charles Edward Thomas, appeals from his conviction in the Madison Circuit Court of terroristic threatening and from an order of that court overruling his motion for a new trial based on newly discovered evidence.

Appellant was living in Richmond, Kentucky, when his estranged wife, Gladys Thomas, returned from Chicago, Illinois, on June 26, 1976, in order to attempt a reconciliation of their marriage.

On July 15, 1976, Mrs. Thomas swore out a complaint against appellant alleging that on the previous day he threatened to kill her. Appellant was convicted in the Richmond Police Court of terroristic threatening in violation of KRS 508.080 and was sentenced to twelve (12) months in the county jail on September 21, 1976.

Appellant appealed this conviction and a trial *de novo* was held in the Madison Circuit Court on June 28, 1977.

The case for the Commonwealth was based solely on the testimony of Gladys Thomas. Mrs. Thomas on direct examination stated that on the Friday before she went to swear out the warrant that she was in her front yard cutting weeds with a butcher knife when appellant came out of the house, hit her across the back with his hand, laughed and ran into a barber shop next door. Appellant then came back laughing and hit her across the back with a belt and then ran into a liquor store about three doors down from the house. Appellant continued to aggravate Mrs. Thomas until she asked him to go and get her a coke.

Mrs. Thomas then testified thusly:

. . . So, we went about an hour, an hour and a half after my mom left and he came in and said, "I told you to get ready to go," and I said, "I'm not going," and

he grabbed me by the hair of the head and threw me against the refrigerator and said, "you are going or I will kill you and prove self-defense. This is one time everything is on my side. So, just get dressed and let's go somewhere and show everybody what a happy family we are."

. . .

Next, Mrs. Thomas gave testimony concerning the circumstances surrounding the threat which is the basis for the charge against appellant:

. . . So, on Wednesday, he came in and he said, "I will come home. I'm coming home." I said, "you can't. You absolutely cannot. I went and applied for welfare," and he said, "I have to tell the man, Mr. Clark, that I'm here or I'll be in trouble." One thing led to another and he jumped up in the middle of the floor and said, "you and Brenda have got me against the wall. You're going to get me in trouble. *I will cut both your heads off before I go back.*" Those are almost the exact words. And I looked around and the little girl was standing right in the screen door . . .

On cross-examination, Mrs. Thomas testified that this threat was made in the late afternoon and that on the next morning, on July 15, 1976, she went and got a warrant.

Appellant's evidence consisted of the testimony of five (5) witnesses. Two witnesses, Paul Rucker and Cecil Ballard, testified about the backslapping incident which appeared to them to be just horseplay. Neither witness knew on which date this incident took place.

Dewey Allen and Linda Ross both testified that appellant had supper at the Ross home on the evening of July 14, 1976.

Mrs. Ross testified that appellant arrived at her home between 6:00 to 6:30 p. m. that evening and left between 9:00 to 9:30 p. m. Dewey Allen testified that on July 14, 1976, between 4:00 and 5:00 p. m., he met appellant at Bluegrass Liquors and that he and appellant went to the home of Linda Ross for supper. Allen and appellant left Mrs. Ross's home about 9:00 p. m. and went back to Bluegrass Liquors and stayed there to-

gether until 10:30 or 11:00 p. m. Another witness, Carol Richards, substantiated the testimony of Dewey Allen and Linda Ross.

Mrs. Thomas also gave further testimony to the effect that the threat was made before 4:00 p. m.

A verdict of guilty was returned by the jury, which fixed appellant's punishment at imprisonment for six (6) months.

Subsequently, appellant filed a pro se motion for a new trial on the grounds of newly discovered evidence which consisted of three (3) "unsworn affidavits". Two (2) of these affidavits were given by Paul Rucker and Cecil Ballard, who were witnesses at the previous trial. These affidavits merely indicated that the backslapping incident occurred on or about July 9, 1976, and not on July 14, 1976.

A third affidavit was given by Irene McWhorter, Mrs. Thomas's mother, which merely again placed the time of the backslapping incident to have occurred around 2:30 p. m. on July 9, 1976.

The trial court overruled appellant's pro se motion on September 22, 1977, thusly:

. . . The defendant having filed, pro se, a Motion Seeking a New Trial Based Upon Newly Discovered Evidence, said evidence being based principally upon the unsworn statements of Paul Rucker and Cecil Ballard, each of whom testified on defendant's behalf on the trial of this matter, and further based upon the unsworn statement of Irene McWhorter, which specifically states that she has no knowledge of the events and acts that resulted in defendant's conviction, and the Court being sufficiently advised, orders that said motion be and the same hereby is OVERRULED. . . .

Appellant in his direct appeal makes three (3) allegations of error: First, the evidence introduced at trial is insufficient to support his conviction. Second, that appellant's conviction has been based solely on highly inflammatory and irrelevant testimony, thus denying him a fair trial. Third, appellant has been denied due process of law in violation of the Kentucky and Unit-

ed States Constitutions because KRS 508.-080(1)(a) is unconstitutionally vague and overbroad.

■ Appellant's first contention that it was clearly unreasonable for the jury to find the defendant guilty is clearly unfounded. In the case at bar, the jury, acting as the trier of fact, believed Mrs. Thomas's story. The additional witnesses added little if anything to the case for the defense. We cannot say that their verdict was not based on substantial evidence.

This court feels that the evidence presented by the Commonwealth established the offense of terroristic threatening and that it was proper for the trial court to submit the case to the jury. *Smith v. Commonwealth,* Ky., 263 S.W.2d 929 (1954).

Second, appellant argues that he was substantially prejudiced by certain irrelevant and highly inflammatory portions of Mrs. Thomas's testimony.

Appellant cites several examples. When asked why she came back from Chicago, Mrs. Thomas replied, "I thought that anything would be better than staying here and putting up with him and *he did touch my child in a sexual way and he even tried to . . . .*"

Appellant's trial counsel objected to this statement immediately and the trial court properly admonished the jury.

When asked if she had testified about the alleged threat at some other hearing, Mrs. Thomas replied that she gave testimony at appellant's parole revocation hearing. Whereupon appellant's trial counsel objected and the jury was once again properly admonished by the trial court.

Mrs. Thomas also gave testimony which stated that while she lived in Chicago, appellant lived with another woman and that this woman was pregnant with his child. Further that this same woman had taken a warrant out against him and finally that appellant's threat caused Mrs. Thomas's daughter so much distress that, "she stayed up all night, having nightmares about him cutting my throat and drinking the blood . . . ." These statements made by Mrs.

Thomas were never objected to by appellant's trial counsel.

Appellant argues and cites several cases including *Acres v. Commonwealth,* Ky., 259 S.W.2d 38 (1953), for the authority that testimony on collateral matters which is introduced solely for the purpose of smearing the character of the defendant or for the purpose of showing other offenses constitutes reversible error.

This is certainly true; but the conviction in *Acres v. Commonwealth, supra* was reversed because the trial court let the prejudicial testimony in and failed to admonish the jury to disregard it.

■ In this case, the trial court admonished the jury to disregard every statement made by Mrs. Thomas that appellant's trial counsel objected to. The trial counsel did not ask for a mistrial. As to those statements which were not objected to, we cannot consider them because they have not been preserved for appellate review.

It almost seems ironic for appellant to raise a cry against this prejudicial testimony on appeal when appellant's own trial counsel stated in his closing argument that the appellant, "is not on trial for being on parole."

■ In any case, appellant has failed to show that any of these alleged inflammatory statements were so prejudicial as to constitute "palpable error" so as to deny appellant's right to a fair trial. *Salisbury v. Commonwealth,* Ky.App., 556 S.W.2d 922 (1977).

Third, appellant attacks his conviction under KRS 508.080(1)(a) by alleging that this statute is unconstitutionally vague and overbroad. Appellant states that this defect can be cured by narrowing the application of this statute by this court on appellate review.

KRS 508.080 provides thusly:

. . . (1) A person is guilty of terroristic threatening when:

(a) He threatens to commit any crime likely to result in death or serious physical injury to another person or likely to

result in substantial property damage to another person; or

(b) He intentionally makes false statements for the purpose of causing evacuation of a building, place of assembly, or facility of public transportation.

(c) Terroristic threatening is a Class A misdemeanor. (Enact. Acts 1974, ch. 405, § 72.)

Appellant further attacks KRS 508.-080(1)(a) in his brief as follows:

. . . There is no specific requirement that the defendant's "threat" be serious or intended to be serious. Therefore, the statute can be applied to any statement threatening bodily harm regardless of whether the defendant was speaking in jest or even in anger but without any intent to actually convey a serious threat.

The facts as defined above clearly demonstrate that the present case is not the type of conduct the legislature intended to denounce in KRS 508.080(1)(a). If it was, this Court will be flooded with "terroristic threatening" cases arising out of marital disputes. Indeed, it will be an effective weapon in the hands of any vindictive spouse. Therefore, this Court has an obligation to narrow the application of the statute to serious threats intended to convey a real apprehension of imminent attack. . . .

In the present case, the jury was not required to believe that appellant was serious. In the context outlined above, this is an extremely important question.

. . .

KRS 508.080(1)(a) is identical to § 925(1)(a) of the Kentucky Penal Code, Final Draft (LRC 1971). The commentary to this section states in part:

The first part of this section provides penal sanctions for threats of a more serious nature than those covered by the offense of menacing. Two differences between the offenses should be specifically noted: (i) Menacing requires a threat of only "physical injury" *while terroristic threatening requires a threat of death or "serious physical injury"; and (ii) menacing requires that the victim be placed in reasonable apprehension of immediate injury while terroristic threatening has no requirement of apprehension by the victim. For the latter offense, the victim need not even know of the threat.* Examples of the types of conduct contemplated for this section are threats to commit murder, aggravated assault, and arson. . . . (Emphasis added).

KRS 508.080(1)(a) is also taken from § 211.3 of the Model Penal Code (10 U.L. A.), p. 539 entitled "Terroristic Threats." This section provides:

A person is guilty of a felony of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

The drafter's comments following this section of the Model Penal Code further explain the application of this section.

. . . In drafting legislation penalizing threats, we would not wish to authorize grave sanctions against the kind of verbal threat which expresses transitory anger rather than settled purpose to carry out the threat or to terrorize the other person. The requirement, in some current statutes, that the threat be in writing is probably designed to draw this line between serious and trivial threats. But it seems clear that some threats are serious and meant to be taken so even though not made in writing. For example, persistent telephone threats or even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce. . . . (Model Penal Code § 211.3, Comment) (Tent. Draft No. 11, (1960).

. . . Where, as in the present section, the object is to prevent serious alarm for personal safety, such as may arise from letters or anonymous telephone calls threatening death, kidnapping or bombing, the class of threats can be

narrowly defined, and the gravity of the offense can be related both to the seriousness of the threat and the disturbing character of the psychological result intended or risked by the actor. *Moreover, in the case of terroristic threats there is no occasion to exempt from criminal liability on the ground of the actor's possibly benign ultimate purpose, as is appropriate in connection with the offense of coercion.* Model Penal Code § 211.3, Comment (Prop. Off. Draft, 1962) (emphasis added).

The constitutionality of statutes similar to KRS 508.080(1)(a) has been attacked in a number of other jurisdictions. In all of these cases the statutes passed constitutional muster despite arguments identical to those made by appellant herein.

In *Masson v. Slaton,* 320 F.Supp. 669 (N.D.Ga.1970), a Georgia terroristic threatening statute was attacked on the grounds that it proscribed constitutionally protected conduct when it made illegal bare statements without an overt act or attempt to carry out said threat.

This statute Ga.Code Ann. § 26–1307 reads in part:

(a) A person commits a terroristic threat when he threatens to commit any crime of violence, or to burn or damage property, with the purpose of terrorizing another, or of causing the evacuation of a building, place of assembly, or facility of public transportation, or otherwise causing serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

. . .

The District Court upheld the constitutionality of the statute as follows:

. . . Plaintiff herein contends that the statute proscribes constitutionally protected conduct when it makes illegal bare statements without an overt act or attempt to carry out said threat. This allegation, however, completely ignores the line of cases following Justice Holmes oft-cited "fire" analogy in *Schenck v. United States,* 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919), wherein it was as-

serted that statements alone can be without First Amendment protection. The right to free speech is not an unlimited right. It entitles an individual to advocate certain ideas regardless of their popularity, but it does not extend to the threatening of terror, inciting of riots, or placing another's life or property in danger. . . .

In *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705, 58 A.L.R.3d 522 (1972), the Supreme Court of Kansas upheld the constitutionality of a statute which was drawn from § 211.3 of the Model Penal Code. This statute reads as follows:

. . . A terroristic threat is any threat to commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in wanton disregard of the risk of causing such terror or evacuation. . . . A terroristic threat is a class E felony. (K.S.A.1971 Supp. 21–3419).

The Supreme Court of Kansas then upheld this statute thusly:

. . . Under the constitutional attack lodged by the appellant, he contends the statute was enacted to proscribe threats in connection with campus unrest, fire and bomb threats to public buildings and threats which arise from mob violence. He argues the statute is vague, indefinite and uncertain if it is extended to terroristic threats to person or property of an individual as it does not advise the ordinary citizen of the required nature of the proscribed threats. . . .

A criminal statute which either forbids or requires an act in vague terms that men of common intelligence must guess at its meaning and differ as to its application lacks the first essential of due process of law. A statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . . In creating an offense which was not a crime at common law the legislature must make the statute sufficiently certain to show

what was intended to be prohibited and punished, otherwise it will be void for uncertainty. But reasonable certainty is all that is required, and liberal effect is always to be given to the legislative intent in view of the evil to be corrected. . . . These rules have been recognized and applied in our more recent cases. See *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, at page 765, 408 P.2d 877, where it was said the test to determine whether a criminal statute is void by reason of being vague and ambiguous is—does the language convey a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice? If the statute does it is not void for vagueness. . .

The Court then concluded that the few other jurisdictions which have dealt with "terroristic threat" statutes have had no trouble in finding the common meaning of the term "terroristic threat". Further, that given the ordinary definitions for the words "threat" and "terrorize", such words could be sufficiently understood by men of common intelligence so as to survive any challenge for vagueness and uncertainty. Finally, the wording of the statute appeared sufficient to proscribe threats directed generally against one or more persons and regardless of the purpose which the terrorist had in mind. See also *Lanthrip v. State,* 235 Ga. 10, 218 S.E.2d 771 (1975), and *State v. Schweppe,* 306 Minn. 395, 237 N.W.2d 609 (1975).

■ First, after reviewing KRS 508.-080(1)(a) in light of the foregoing cases and authorities, this court believes that KRS 508.080(1)(a) is not unconstitutionally vague and overbroad since the conduct proscribed, "threaten[ing] to commit a crime likely to result in death or serious physical injury" is not protected under either the Kentucky or United States Constitutions. Further, the language of the statute is sufficiently explicit to put the average citizen on notice as to the nature of the conduct so proscribed.

This court is aware of the recent decision in *U. S. v. Sturgill,* 563 F.2d 307 (6th Cir.

1977), which invalidated KRS 525.070(1)(b) on the basis that it was unconstitutionally overbroad. KRS 525.070(1)(b) provides: "A person is guilty of harassment when with intent to harass, annoy or alarm another person he: . . . (b) In a public place, makes an offensively coarse utterance, gesture or display, or addresses abusive language to any person present."

In *Sturgill,* the court, citing *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), held that in order for a statute, which punishes spoken words only, to withstand an attack on its constitutionality; it must be first authoritatively interpreted by the state courts as not interfering with speech protected by the First Amendment.

This case can be distinguished from *Sturgill,* in that the language so proscribed under KRS 508.080(1)(a) is clearly without constitutional protection under the First Amendment.

Second, appellant's assertion that the statute is defective because it does not require the defendant's threat to be serious or that it does not require an intent to actually convey a serious threat is ludicrous.

This court feels that the following interpretation of the Maine "terroristic threatening" statute by the Supreme Judicial Court of Maine in *State v. Lizotte,* Me., 256 A.2d 439 (1969), can be applied to appellant's contentions in the case at bar.

. . . When the unlawful threat is knowingly and wilfully made, the offense is complete, so that the existence of an intention to carry out the threat, or a subsequent abandonment of the bad intent with which the threat was made, is immaterial. Although idle talk or jesting will not constitute the crime, the accused cannot be regarded as having used his language only as a joke because of the fact that he may have had no intention to carry out his threat. The motive which prompts the utterance of a threat is immaterial. To bring a case within the statute no evil purpose or malice is requisite other than an intention to give utter-

ance to words which to the accused's knowledge were in the form of, and would be naturally understood by the hearers, as being a threat. . . .

Certainly, KRS 508.080(1)(a) does not apply in the case of idle talk or jesting. The defendant's intent to commit the crime of "terroristic threatening" can be plainly inferred from the defendant's own words and the circumstances surrounding them. All the statute requires is that the defendant threaten "to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person".

In this case, the jury as the trier of fact, believed the testimony of Mrs. Thomas. They believed that appellant had threatened to cut her head off and that the threat was not made in jest. The intent to commit the offense was implied from appellant's own words. Therefore, the statute was complied with in all respects.

In addition, appellant argues that the "threats" allegedly made by him were at most conditional in nature and that these words did not reveal a present intention to do Mrs. Thomas bodily injury. We cannot agree.

A statement of an intention to inflict harm on another, conditioned upon a future happening would tend to generate fear in direct proportion to the likelihood that the condition would be fulfilled. However, the mere fact that the harm is made upon a condition, such as appellant herein getting into trouble with his probation officer, does not prevent it from being anything less than a real threat under KRS 508.080(1)(a). *Postell v. United States,* D.C., 282 A.2d 551 (1971).

Third, KRS 508.080(1)(a) does not require, as contended by appellant, that the victim be placed in reasonable apprehension of immediate injury. This was shown clearly in the commentary to § 925 of the Kentucky Penal Code, Final Draft (LRC 1971). Instead, KRS 508.050(1) establishes the offense of "menacing" and requires that the victim be placed "in reasonable apprehension of imminent physical injury."

Finally, this court does not believe that the unsworn statements of Paul Rucker, Cecil Ballard and Irene McWhorter, could in any conceivable way be considered as newly discovered evidence.

Therefore, appellant's conviction under KRS 508.080(1)(a) is affirmed and we further find that appellant's motion for a new trial under CR 60.02(2) was properly overruled.

All concur.