STATE of Iowa, Appellee,

v.

**Patrick John CRONE, Appellant.**

No. 94–1805.

Supreme Court of Iowa.

March 20, 1996.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, J. Patrick White, County Attorney, and Anne Lahey, Assistant County Attorney, for appellee.

TERNUS, Justice.

The relationship between appellant, Patrick Crone, and his girlfriend, Andrea Forman, was a stormy one. A sequel to this relationship was Crone's conviction of extortion after he threatened to circulate compromising photos of Forman if she did not meet with him. Crone claims his conduct does not fall within our criminal extortion statute, Iowa Code section 711.4 (1989). We think it does and so affirm his conviction.

I. *Background Facts and Proceedings.*

In 1987 and 1988, Crone and Forman had a tumultuous relationship that resulted in Crone's conviction of domestic assault and criminal mischief. Although their relationship had been over for some time, they found themselves drinking at Maxie's, a restaurant and tavern in Iowa City, on the evening of September 26, 1989. Forman worked at Maxie's and had stopped to check her work schedule. She stayed to socialize, however, because she was depressed over her current boyfriend's recent incarceration. Crone was there celebrating his receipt of funds from a lawsuit settlement.

Forman became quite intoxicated but remembers a stranger telling her that Crone wanted to apologize to her for his past actions. She eventually joined Crone in a booth. Forman recalls very little of what happened after that until she woke up in an unfamiliar mobile home the next morning: She was unclothed from the waist down and was lying beside Crone who was also naked. Forman hurriedly left the trailer and returned home.

Crone testified Forman, at her request, had accompanied him to the trailer where he was staying with a friend. Once there, they began to cuddle and kiss. Crone left to go to the bathroom; when he returned, Forman was naked from the waist down. It was then Crone devised a plan to slander Forman. As Forman lay sleeping, Crone took pictures of her. One photograph showed Forman lying in a fetal position; her face was recognizable and she had no clothes on below her waist. The second picture was of Forman's naked buttocks, with Crone's erect penis nearby.

The next day, Crone constructed more than fifty 8½ by 11–inch fliers which displayed Crone's photographs of Forman and a message giving Forman's name, place of employment and phone number and inviting one and all to call her. He then proceeded to Maxie's with the pictures and fliers where he showed them to his friends and the head waitress. When Forman arrived at Maxie's to work that afternoon, Crone approached her and asked her to meet with him privately. She felt harassed and so agreed to meet him later, even though she did not plan to do so.

When Forman returned home that evening after work, she began to receive phone calls from Crone. Crone wanted Forman to meet him; this time Forman refused. She asked Crone to leave her and her family alone. Crone responded that he had some illicit pictures and that if Forman did not meet with him, he would talk to her boyfriend, her family and her friends, and would circulate

the pictures. Eventually, Forman stopped answering the phone and some of Crone's calls were taped on Forman's answering machine.

In early October 1989, the fliers made by Crone appeared in a variety of public places: tacked on telephone poles, distributed throughout the University of Iowa student union and placed on the windshields of parked cars. Copies were also mailed to Forman's friends and family, as well as her mother's co-workers.

Crone fled the state and was later found in Idaho. In March 1994, he waived extradition and returned to Iowa. The State charged Crone with extortion in violation of Iowa Code section 711.4(3) (1989) and sexual abuse in the third degree, in violation of Iowa Code sections 709.1(1) and 709.4(1) (1989). Following a jury trial, Crone was convicted of extortion and assault with intent to commit sexual abuse. He was sentenced to consecutive terms of five years and two years respectively. Crone appeals only his extortion conviction and sentence.

On appeal, Crone claims the evidence is insufficient to prove two elements of extortion: (1) that Crone threatened Forman, and (2) that Crone acted for the purpose of obtaining something of value for himself or another. In response to the State's argument that error was not preserved on these issues, Crone claims his trial counsel was ineffective for failing to make these arguments in support of a motion for judgment of acquittal. In addition to the sufficiency-of-the-evidence claim, Crone also asserts his trial counsel was ineffective for not objecting to evidence of Crone's steroid use.

## II. Sufficiency of the Evidence.

■ A. *Standard of review.* We review Crone's claim that the evidence was insufficient to support his conviction by examining the record in the light most favorable to the State. *See State v. Terry,* 544 N.W.2d 449, 450 (Iowa 1996). We look for substantial evidence, including any inferences arising from the evidence, to support the jury's verdict. *Id.* at 451. If the verdict is supported by substantial evidence, it is binding on this court. Iowa R.App.P. 14(f)(1).

Evidence that could convince a trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt is substantial evidence. *Terry,* 544 N.W.2d at 451.

■ B. *Preservation of error.* Crone's trial counsel made a motion for judgment of acquittal; it was overruled. The record reveals Crone's attorney did not mention the "threat" or "anything of value" elements of the extortion charge in his motion. Accordingly, Crone's motion for judgment of acquittal did not preserve the specific arguments he is now making for the first time on appeal. *See State v. Geier,* 484 N.W.2d 167, 170–71 (Iowa 1992) (motion for judgment of acquittal does not preserve error where there was no reference to grounds in district court).

## III. Ineffective Assistance of Counsel.

■ Crone claims his trial counsel was ineffective because he did not raise the precise sufficiency-of-the-evidence claims now asserted on appeal. Crone also complains his trial attorney did not object to the admission of evidence of Crone's past use of steroids. To successfully prove his ineffective-assistance-of-counsel claim, Crone must prove his counsel failed to perform an essential duty and this failure resulted in prejudice. *See Terry,* 544 N.W.2d at 453. We will affirm if either element is absent. *State v. Spurgeon,* 533 N.W.2d 218, 219 (Iowa 1995).

With respect to the first element, Crone must prove his attorney's performance was not within the normal range of competence. *See id.* As to the second element, Crone has the burden to establish his lawyer's error resulted in an actual and substantial disadvantage, creating a reasonable probability that but for the error the outcome of the trial would have been different. *See id.* at 220.

## IV. Extortion.

■ We first consider Crone's claim of ineffective assistance of counsel as it relates to the sufficiency of the evidence to prove extortion. Our review of the elements of this crime and the record made at trial convinces us a motion for judgment of acquittal based on the grounds urged on appeal would not have been successful. Therefore, trial coun-

sel was not ineffective for failing to include these grounds in his motion for judgment of acquittal. Our analysis follows.

A. *Elements of crime.* Iowa Code section 711.4 defines the crime of extortion:

A person commits extortion if the person does any of the following with the purpose of obtaining for oneself or another anything of value, tangible or intangible, including labor or services:

. . . .

3. Threatens to expose any person to hatred, contempt, or ridicule.

. . . .

Iowa Code § 711.4 (1989). The State had the burden to prove that (1) Crone threatened to expose Forman to hatred, contempt or ridicule (2) for the purpose of obtaining for himself or another (3) anything of value, tangible or intangible. Crone contends the State failed to prove him guilty beyond a reasonable doubt because there was insufficient evidence of a threat or of an attempt to gain anything of value.

■ B. *Existence of a threat.* The State argued at trial that Crone threatened to circulate the illicit photographs of Forman if she did not meet with him. Crone claims on appeal that there is no evidence he actually threatened Forman.[1] Forman testified, however, that when Crone called her the day after their encounter, "[h]e told me if I didn't meet him, he was going to talk to my boyfriend, my family, my friends, and start circulating these pictures." Forman said she interpreted Crone's phone calls to her as a threat.

■ Section 711.4 does not define the term "threaten," so we give this word its ordinary meaning. *See State v. Ahitow,* 544 N.W.2d 270, 271 (Iowa 1996); Iowa Code § 4.1(38) (1995). We look to the dictionary for guidance in determining the ordinary meaning of a word. *State v. Romeo,* 542 N.W.2d 543, 548 (Iowa 1996). "Threaten" is defined as "promise punishment, reprisal, or other distress to." Webster's Third New Int'l Dictionary 2382 (1993). The word "reprisal" includes "an action of retaliation." *Id.* at 1927.

■ Threats need not be explicit; they may be made by innuendo or suggestion. *State v. McGinnis,* 243 N.W.2d 583, 589 (Iowa 1976). It is only necessary that the threat be definite and understandable by a reasonable person of ordinary intelligence. *Id.* We think there is substantial evidence to support a jury finding that Crone threatened Forman. A reasonable person of ordinary intelligence would have understood Crone's statements on the telephone to be a promise of a retaliatory act if Forman did not meet with him. Therefore, there is sufficient evidence of a threat by Crone.[2]

C. *Attempt to gain something of value.* The State contended at trial that a meeting with Forman was something of value to Crone. On appeal, Crone claims the State's contention fails as a matter of law for two reasons. First, Crone asserts the exaction of a meeting with Forman is simply compelling her to do something against her will, an act not encompassed in our statute as interpreted in *French v. Foods, Inc.,* 495 N.W.2d 768 (Iowa 1993). Second, Crone argues there was no proof that a meeting had any value to him or anyone else because Crone's goal to embarrass Forman had already been accomplished by the time he called her. We find both arguments unpersuasive.

---

1. Crone also claims the State waived this issue by failing to argue or cite to any authority on this issue in its brief. *See* Iowa R.App.P. 14(a)(3). We note rule 14 provides that a failure to argue or to cite authority *"may* be deemed waiver." *Id.* (emphasis added). We will not deem the State's failure a waiver under the circumstances of this case where the State's position on this issue clearly has merit and its failure to cite authority or argue the issue has not hindered our review or consideration of the issue.

2. Crone argues that by the time he called Forman, he had already shown people at Maxie's the fliers. He argues one cannot threaten to do what one has already done. We need not decide whether a threat to do something one has already done satisfies the statute. Crone's argument fails for an even more fundamental reason: it is factually inaccurate. At the time Crone called Forman, he had not yet sent copies of the fliers to Forman's family and friends or her mother's co-workers. Consequently, he had not already done everything he threatened he would do if Forman did not meet with him.

272

Iowa's extortion statute as it existed prior to the new criminal code prohibited malicious threats done "with intent to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will." Iowa Code § 720.1 (1977). In 1976, the extortion statute was rewritten to its present form, effective January 1, 1978. 1976 Iowa Acts ch. 1245, § 1104 (codified at Iowa Code § 711.4 (1979)). The statute now prohibits threats made "with the purpose of obtaining for oneself or another anything of value, tangible or intangible, including labor or services." Iowa Code § 711.4 (1989).

In the *French* case, we noted the difference between the former version of this statute and its current form: "Section 711.4 is now limited to conduct aimed at obtaining something of value and no longer prohibits compelling a person to perform an act against their will." *French,* 495 N.W.2d at 772. Crone interprets this statement as decriminalizing a threat made to compel a person to do an act against the person's will. This reading of *French* is too broad.

█ The change in language made in section 711.4 merely altered the focus of our analysis in deciding whether a threat falls within the statute; we now look to whether the defendant hoped to obtain anything of value for himself or another. Under the old statute there were alternate focal points: whether the defendant intended to extort money or a pecuniary advantage *or* whether the defendant attempted to compel the person threatened to do an act against that person's will. As we noted in *French,* the new statute did, in one sense, "limit" the prohibited conduct by eliminating the second alternative; a threat *only* designed to compel a person to do something against that person's will does not violate the statute. However, the amended statute also *broadened* the crime of extortion in Iowa because extortion is no longer limited to attempts to extort "money or pecuniary advantage"; the extortion of "anything" of value is now sufficient. Consequently, if a defendant's conduct is done for the purpose of obtaining something of value for himself or another, that conduct falls within the scope of the statute even though the defendant's threat might also be intended to compel the threatened person to do something that person does not want to do.

We find substantial evidence that Crone's threats were intended to extort a personal meeting with Forman. If such a meeting had value to Crone, his threats are encompassed in the statute. The fact that Forman *did* not want to meet with Crone and that Crone intended to compel her to do so against her will is not a defense under the new statute. Thus, we now examine Crone's argument that a meeting with Forman had no value to him.

Crone claims he had nothing to gain from a meeting with Forman because by the time he called Forman at home, he had already embarrassed her by showing the fliers and photographs to his friends at Maxie's. We think the jury could have found otherwise.

█ Because the legislature did not define the word "value," we use its ordinary meaning. *See State of Iowa ex rel. Lankford v. Allbee,* 544 N.W.2d 639, 640 (Iowa 1996); *Romeo,* 542 N.W.2d at 548; Iowa Code § 4.1(38) (1995). The dictionary defines value in several ways, two of which are potentially applicable here. One meaning is "the *monetary* worth of something." Webster's Third New Int'l Dictionary 2530 (1993) (emphasis added). Another meaning is "*relative* worth, utility, or importance." *Id.* (emphasis added). Although the word "value" has two different meanings, that fact does not necessarily mean the term is ambiguous as used in section 711.4. We examine the text and structure of the statute, giving effect to its object and purpose, to decide whether reasonable minds would disagree on the meaning of the word "value" as used in the statute. *See Ahitow,* 544 N.W.2d at 271.

The word "value" is modified in section 711.4: "*anything* of value, tangible *or intangible.*" Iowa Code § 711.4 (1993) (emphasis added). We think this language clearly points to the broader definition of "value,"—"*relative* worth, utility, or importance," not the narrow definition—"the *monetary* worth of something." Consequently, we conclude reasonable minds would not disagree on

<sup />

which meaning was intended by the legislature: The statute is unambiguous.

Moreover, even if we accepted Crone's argument that the statute is ambiguous, and therefore, apply rules of statutory construction, we would come to the same conclusion. A helpful tool in statutory interpretation is an examination of legislative history. *See* Iowa Code § 4.1(4) (1995) (if statute is ambiguous, court may consider former statutory provisions). We recently discussed the significance of amendments to a statute:

Statutory amendments may either clarify or modify existing legislation. We construe revisions to a statute as altering that statute if the intent to change the law is clear and unmistakable. Moreover, any material change in the language of a statute is presumed to alter the law.

*Ahitow,* 544 N.W.2d at 273 (citations omitted).

Here the legislature changed the words "money or pecuniary advantage" to "anything of value." We think this change is material because there is a distinct difference between "monetary or pecuniary" value and "anything" of value. The legislature must have intended to alter the scope of the statute by eliminating any limitation to monetary worth. Therefore, we conclude the term "value" as used in section 711.4 means the particular importance attached to something by the person making the threat. *See* Webster's Third New Int'l Dictionary 2530 (1993) (defining "value" as "relative worth, utility, or importance"); *see also State v. Knutson,* 220 N.W.2d 575, 578 (Iowa 1974) (holding satisfaction of defendant's sexual desires was a "thing of value" within meaning of kidnaping statute).

Applying that definition here, we examine the record to determine whether there was substantial evidence a face-to-face meeting with Forman was important to Crone. We think there was. Crone was relentless in his efforts to exact such a meeting. He called Forman numerous times; he consistently asked her to meet with him. We reject Crone's argument that any meeting could not have had any value to him because he had already shown the photographs. It is not necessary that the jury be able to discern exactly *why* a meeting with Forman was important to Crone; it is enough that the evidence convinced the jury that for whatever reason a meeting with Forman was worth something to him. Such a conclusion is not unreasonable despite the fact that Crone had already shown the pictures and fliers to others. His wish for a personal meeting may have been as simple as a desire to witness the look on Forman's face when she saw the photographs.

We conclude there was sufficient evidence that Crone threatened Forman with the purpose of obtaining something of value for himself. Therefore, Crone's trial counsel was not ineffective for failing to challenge the jury's findings on these elements in his motion for judgment of acquittal.

V. *Evidence of Steroid Use.*

During Crone's direct testimony, he stated he did not use narcotic drugs. On cross-examination, he admitted in response to questions from the prosecutor that he had in the past taken steroids without a doctor's prescription.[3] His attorney did not object to this questioning and Crone claims trial counsel was ineffective for not doing so. Even if we assume the admission of this evidence was objectionable, Crone can show no prejudice.

To establish prejudice, Crone must show a reasonable probability that but for the error the outcome of the trial would have been different. *See Spurgeon,* 533 N.W.2d at 220.

---

**3.** The examination on Crone's steroid use was brief:

Q: Mr. Crone, you have stated that you don't use narcotics; isn't that correct? A: No, I do not.

Q: But you do use drugs, don't you? A: Yes, I take prescription drugs.

Q: You take steroids, don't you? A: No, I do not.

Q: You have in the past and, in fact, you were at that time, weren't you? A: No, I was not on steroids at that time.

Q: When did you go off them? A: I have been off steroids for years. I have used them. I admit that. Originally, I started through a doctor.

The evidence of Crone's guilt was substantial. Crone admitted that he took the pictures, had them developed and made the fliers. He also admitted that he called Forman the next day, asking her to meet him and that he mentioned the pictures. He testified he wanted her to come to Maxie's so he could embarrass her. Two of his calls were taped. In one call, he asks Forman to meet with him and she asks him to stop calling. In another call, he and a friend attempt to convince Forman that compromising pictures of her really exist. Crone's own testimony and the taped calls corroborate Forman's testimony that Crone repeatedly threatened to circulate the compromising photographs of her if she did not meet with him. In contrast, the allegedly objectionable evidence concerned minimal drug usage, partially on doctor's orders, which occurred in the distant past.

We are unable to conclude that the evidence of Crone's past steroid use worked to his actual and substantial disadvantage or that the result of the trial would have been different had this evidence not been admitted. *See State v. Hill,* 449 N.W.2d 626, 629 (Iowa 1989) (court concluded even if jury was erroneously instructed, there was "no reasonable probability the jury would have reached a different verdict"); *cf. United States v. Garbett,* 867 F.2d 1132, 1135 (8th Cir.1989) (admission of defendant's prior conviction for possession of marijuana was harmless error "in view of overwhelming evidence linking" defendant to the crime charged).

The case of *State v. Liggins,* 524 N.W.2d 181 (Iowa 1994), upon which Crone relies, is distinguishable. In *Liggins,* the trial court erroneously admitted evidence that the defendant was a drug dealer. *Liggins,* 524 N.W.2d at 188. We held the admission of this evidence was prejudicial because "[i]t appealed to the jury's instinct to punish drug dealers." *Id.* at 188–89. We also observed the evidence against the defendant was not overwhelming. *Id.*

The present case is different because there is abundant evidence of Crone's guilt. In addition, there is less prejudicial effect from evidence of past use of steroids as compared to a defendant's current occupation as a co-

caine dealer. In sum, the evidence of Crone's guilt so outweighs any prejudicial effect from the admitted evidence that we cannot say the outcome of the trial would have been any different had the jury not known Crone had used steroids in the past. Therefore, Crone has failed to establish his ineffective-assistance-of-counsel claim.

**AFFIRMED.**