**STATE of Iowa, Appellee,**

v.

**Timothy MILNER, Appellant.**

No. 96–1424.

Supreme Court of Iowa.

Oct. 22, 1997.

son and we detect no constitutional infirmity in section 712.8. Therefore, we affirm.

### I. *Background Facts and Proceedings.*

In June of 1995, DES denied unemployment benefits to Milner. Milner went to a Des Moines office of DES and talked with a DES interviewer, Tom Saylor. Milner was visibly angry and, using profanity, expressed dissatisfaction with the decision made by DES on his claim. As he left, he said to Saylor, "Just remember what happened in Oklahoma City."[1] Saylor viewed this statement as a threat and reported the incident to the Des Moines police.

Three days later Milner telephoned DES and spoke with DES employee Ann Morris. Milner was still angry and told Morris, "I'll use the last of my gas money to come down and blow the place up." Several times during Milner's fifteen-minute conversation with Morris he said he would "drive in his truck and come blow [them] away."

Morris transferred Milner's call to her supervisor, Glen Howard. Milner continued to be very agitated and upset during his conversation with Howard. He spoke to Howard for forty-five minutes, expressing his dissatisfaction with DES and telling Howard what he—Milner—might or would do about his complaints. Milner said, among other things, that he would come to the DES office with a hatchet and that he would drive his truck into their building. During a later phone conversation between Milner and Howard, Milner said, "I'm not going to be responsible for my behavior if you continue to aggravate me." Milner also told Howard "someone might get hurt" and it is "not going to be pretty if I have to come down there." These conversations were reported to the police.

The DES staff was very concerned about Milner's statements. Based on the content of Milner's statements, his tone of voice, and his agitated state, DES employees believed Milner was desperate and a threat to their safety. DES formed a security committee,

Joseph L. Walsh, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John Sarcone, County Attorney, and George Karnas, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Timothy Milner, was convicted of threat of arson based on statements he made to employees of the Department of Employment Services (DES) between June 13 and June 16, 1995. *See* Iowa Code § 712.8 (1995). He appeals, claiming (1) the evidence was insufficient to support his conviction, and (2) the statute under which he was convicted is overbroad and vague. We find substantial evidence in the record to support Milner's conviction of threatening arson

---

**1.** On April 19, 1995, a truck bomb exploded near the Alfred P. Murrah Federal Building in Oklahoma City, killing 168 and wounding 600.

hired a security consultant, and installed a security system.

Based on these events, the State filed a trial information charging Milner with threatening to commit arson in violation of Iowa Code section 712.8. Milner's pretrial motion to dismiss the charge on the basis that section 712.8 was unconstitutionally overbroad and vague was overruled.

Milner waived jury trial, and the case was submitted to the district court on a stipulated record consisting of the police reports, the depositions of witnesses, and the documents submitted in connection with the motion to dismiss. The district court found Milner guilty of the charge of threat of arson and sentenced him to five years imprisonment, suspending the sentence and placing Milner on two years probation. Milner brings this appeal.

We start our analysis with an interpretation of section 712.8 and consideration of whether the evidence was sufficient to support the trial court's decision that Milner violated the statute. We will then determine whether there is any merit to Milner's constitutional challenges to the statute as we have interpreted and applied it.

II. *Sufficiency of the Evidence.*

A. *Interpretation of the statute.* Milner was convicted of violating Iowa Code section 712.8:

> Any person who threatens to place or attempts to place any incendiary or explosive device or material, or any destructive substance or device in any place where it will endanger persons or property, commits a class "D" felony.

Iowa Code § 712.8. Although we have never interpreted section 712.8 before, we have considered the meaning of the words "threaten" and "threat" in connection with other criminal statutes.

■ In prior cases interpreting the words "threaten" or "threat," we have applied the common meaning of those words. In *State v. Crone,* 545 N.W.2d 267 (Iowa 1996), we defined the word "threaten" using its ordinary meaning: "promise punishment, reprisal, or other distress to." 545 N.W.2d

at 271 (quoting *Webster's Third New International Dictionary* 2382 (1993)). In *State v. Jackson,* 305 N.W.2d 420 (Iowa 1981), we defined the word "threat" as "an *expression* of an intention to inflict evil, injury or damage on another." 305 N.W.2d at 423 (quoting *Webster's Third New International Dictionary* 2382 (1976)). We further explained in *Crone,* "the threat [must] be definite and understandable by a reasonable person of ordinary intelligence." 545 N.W.2d at 271. Moreover, in considering whether a reasonable person of ordinary intelligence would interpret another's statement as a threat, the statement is viewed in light of the surrounding circumstances. *State v. McGinnis,* 243 N.W.2d 583, 589 (Iowa 1976).

■ We think the same interpretation of "threaten" and "threat" applies here. Section 712.8 prohibits a person from expressing an intention to place an incendiary, explosive, or destructive device or material in a place where it will endanger persons or property. The prohibited statements must be understandable as a threat by a reasonable person of ordinary intelligence. Interpreted in this way, the statute encompasses only true threats and does not reach expressions that a reasonable person would understand as a joke, idle talk, or mere statements of political hyperbole.

■ B. *Sufficiency of the evidence.* In considering Milner's sufficiency-of-the-evidence claim, we view the record in the light most favorable to the State. *State v. Fratzke,* 446 N.W.2d 781, 783 (Iowa 1989). We consider all the evidence, not just the evidence supporting the conviction. *Id.*

Milner contends his statement, "Just remember what happened in Oklahoma City," is not a threat by him to use an incendiary or explosive device. But Milner did not make a vague and isolated reference to the Oklahoma City bombing. Over a five-day period, he made, in an angry and threatening tone of voice, the following statements:

1. Just remember what happened in Oklahoma City.

2. I'll use the last of my gas money to come down and blow the place up.[2]

3. I'll drive in my truck and come blow you away.

4. I'm not going to be responsible for my behavior if you continue to aggravate me.

5. Someone might get hurt.

6. It is not going to be pretty if I have to come down there.[3]

A reasonable person of ordinary intelligence could construe these statements, considered in the context and manner in which they were made, as serious expressions of an intention to place an "explosive device or material" where it will harm people or property. As we have stated before, "[t]hreats need not be explicit; they may be made by innuendo or suggestion. It is only necessary that the threat be definite and understandable by a reasonable person of ordinary intelligence." *Crone,* 545 N.W.2d at 271 (citation omitted). Milner's reference to the Oklahoma City incident, where a truck was rigged as a bomb, clearly made his later comments about driving his truck to the DES office and blowing the place up understandable as a threat to use an explosive device. *See Webster's Third New International Dictionary* 249 (unabr. ed.1993) (defining "bomb" as "a . . . device carrying an *explosive* charge fused to detonate under certain conditions") (emphasis added).

Substantial evidence supports the trial court's finding that Milner threatened to use an explosive device in or near the DES building, including the testimony of the witnesses as to the specific words spoken by Milner, Milner's dissatisfaction and anger over the denial of his claim for unemployment benefits, his threatening tone of voice, and his agitated demeanor. Therefore, we reject Milner's claim the evidence was insufficient to support his conviction.

### III. *Preservation of Error on Constitutional Issues.*

■ Before we consider Milner's constitutional claims on the merits, we must first deal with the State's contention Milner failed to preserve error on these claims because they were raised in an allegedly tardy pretrial motion to dismiss. The State relies on Iowa Rule of Criminal Procedure 10(4), which provides, in part, that pretrial motions under rule 10(2) "shall be filed when the grounds therefor reasonably appear but no later than 40 days after arraignment." Milner's motion was filed fifty-five days after his arraignment.

We begin our analysis with an examination of rule 10(2):

Any defense, objection, or request which is capable of determination without the trial of the general issue *may* be raised before trial by motion. The following *must* be raised prior to trial:

[The rule then lists seven categories of defenses, objections, motions and requests.]

Iowa R.Crim. P. 10(2) (emphasis added). The matters included in the "must-be-raised" list do not include claims that the statute under which the defendant was charged is unconstitutional.

We interpret rule 10(2) as creating two categories of defenses and objections that are the subject of pretrial motions to dismiss: (1) those that "may" be raised by pretrial motion, and (2) those that "must" be raised by pretrial motion. To hold that a defendant must raise *all* objections and defenses no later than forty days after arraignment would render the list following the second sentence of section 10(2) meaningless. *See id.* (naming only seven categories of defens-

**2.** Milner challenges the accuracy of the trial court's finding that Milner said he would "use the last of [his] gas money and come down and blow the place up." This statement was recorded in the supplemental police report filed during the police investigation of this incident. This report was part of the stipulated record before the court and therefore is substantial evidence supporting the trial court's finding this statement was made.

**3.** The parties dispute whether the State may rely on a statement allegedly made by Milner to DES employee Howard that Milner would "back up a truck full of explosives and blow up the facility." We do not consider this statement in deciding the issues before us and therefore find it unnecessary to determine whether the alleged absence of this statement in the trial information precluded the State from using it to prove Milner's guilt.

es, objections, motions and requests that "must" be raised prior to trial); *see also State v. Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996) ("We do not interpret statutes in a way that makes portions of them irrelevant or redundant."). If the legislature had intended this result, it simply would have said that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue [*must*] be raised before trial by motion." Because it did not do so, we think the forty-day restriction on the filing of pretrial motions logically applies only to those grounds that *must* be raised by pretrial motion. This interpretation is also consistent with rule 10(3) which provides that defenses or objections "which *must* be made prior to trial under this rule" are waived if not timely made. (Emphasis added.)

 Our conclusion that the forty-day limitation of rule 10(4) does not apply here is not the end of our inquiry, however. We have held that a pretrial motion under rule 10(2) is the proper vehicle to use when challenging the constitutionality of a statute, and that such a challenge must be raised "at the earliest opportunity in the progress of the case." *State v. Munz*, 355 N.W.2d 576, 584 (Iowa 1984). The purpose of such an error-preservation rule is to give notice to the court and opposing counsel at a time when corrective action is still possible. *State v. Johnson*, 476 N.W.2d 330, 334 (Iowa 1991). We now examine whether Milner raised his constitutional objections to section 712.8 at the earliest opportunity and at a time when correction of any problem was still possible.

 Milner filed his motion to dismiss challenging the validity of section 712.8 twenty-four days after the completion of discovery and twenty-four weeks before trial. He contends depositions of the State's witnesses were necessary to formulate and support his argument that section 712.8 was unconstitutional as applied in this case. (We note the minutes of testimony filed with the trial information were nonspecific as to the statements Milner allegedly made and the minutes simply incorporated "any matters made known to the defendant through discovery and/or depositions in this case.")

We conclude Milner's motion to dismiss adequately preserved his constitutional claims. Under the circumstances of this case, Milner, in filing his motion twenty-four days after the completion of discovery, raised the constitutional issues at the earliest available opportunity. We also note the objectives of our error-preservation rules were accomplished; opposing counsel had adequate time to respond and the trial court had ample opportunity to rule before the trial twenty-four weeks later. Because Milner preserved error on his claim that section 712.8 is constitutionally infirm, we now address the merits of that claim.

IV. *Constitutional Challenges to Section 712.8.*

 A. *Standard of review.* Milner claims section 712.8 is unconstitutionally overbroad and vague as applied to his conduct. *See* U.S. Const. amends. V, XIV. We review constitutional claims de novo. *State v. Huisman*, 544 N.W.2d 433, 436 (Iowa 1996). When considering a challenge to the validity of a statute, we presume the statute is constitutional and "give it any reasonable construction necessary to uphold it." *State v. Hunter*, 550 N.W.2d 460, 462 (Iowa 1996). The challenger has the burden to demonstrate that the statute is unconstitutional by negating every reasonable basis for supporting the validity of the statute. *State v. Osmundson*, 546 N.W.2d 907, 909 (Iowa 1996).

 B. *Overbreadth.* "The First Amendment to the United States Constitution prohibits Congress from making any law 'abridging the freedom of speech.'" *State v. McKnight*, 511 N.W.2d 389, 391 (Iowa 1994) (quoting U.S. Const. amend. 1). The federal constitution's protection of speech applies to the states via the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–18 (1940). In addition, the Iowa Constitution generally imposes the same restrictions on the regulation of speech as does the federal constitution. *E.g., Des Moines Register & Tribune Co. v. Osmundson*, 248 N.W.2d 493, 498 (Iowa 1976) (addressing freedom of the press).

 The First Amendment's guarantee of freedom of speech prevents states from punishing "the use of words or language not within 'narrowly limited classes of speech.'" *Gooding v. Wilson*, 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408, 414 (1972) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942)). Consequently, a statute must be narrowly drawn or authoritatively construed so as "to punish only unprotected speech and not be susceptible of application to protected expression." *Id.* at 522, 92 S.Ct. at 1106, 31 L.Ed.2d at 414. A statute violates the First Amendment and is unconstitutionally overbroad if (1) it substantially proscribes protected speech "judged in relation to the statute's plainly legitimate sweep," *Osborne v. Ohio*, 495 U.S. 103, 112, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98, 111 (1990) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 842 (1973)), and (2) the court cannot narrow the statute to cover only nonprotected speech, *Dombrowski v. Pfister*, 380 U.S. 479, 490–91, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22, 30–31 (1965). When a statute purports to regulate speech, even one to whom the statute may constitutionally be applied is permitted to urge the statute is facially overbroad. *Broadrick*, 413 U.S. at 610–12, 93 S.Ct. at 2914–16, 37 L.Ed.2d at 839–40; *City of Maquoketa v. Russell*, 484 N.W.2d 179, 182 (Iowa 1992).

Because we have now defined "threats" as an *expression* of an intention to inflict injury or damage on another, section 712.8 clearly regulates speech. *See Wurtz v. Risley*, 719 F.2d 1438, 1442 (9th Cir.1983) (holding Montana statute proscribing certain threats was directed at "pure speech" for purposes of overbreadth analysis). We must now decide whether the speech targeted by section 712.8—true threats—is constitutionally protected. For the reasons that follow, we conclude this category of speech does not fall within the protection of the First Amendment.

In *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the United States Supreme Court reviewed a defendant's conviction under a federal statute making it a crime for any person to "knowingly and willfully ... [make] any threat to take the life of or to inflict bodily harm upon the President of the United States." 394 U.S. at 705, 89 S.Ct. at 1400, 22 L.Ed.2d at 666 (quoting 18 U.S.C. § 871(a)). Implying threats were not protected by the First Amendment, the Court stated that "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 707, 89 S.Ct. at 1401, 22 L.Ed.2d at 667. The Court went on to state that the statute under which the defendant was convicted applied only to a "true threat," and not to political hyperbole such as the statements of the defendant.[4] *Id.* at 708, 89 S.Ct. at 1401, 22 L.Ed.2d at 667. Accordingly, the Court reversed the defendant's conviction. *Id.* at 708, 89 S.Ct. at 1402, 22 L.Ed.2d at 668. More recently, the Court has stated "the reasons why threats of violence are outside the First Amendment": "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538, 2546, 120 L.Ed.2d 305, 321 (1992).

 Some courts have interpreted *Watts* as identifying another category of speech not protected by the First Amendment—true threats. *E.g.*, *Melugin v. Hames*, 38 F.3d 1478, 1484 (9th Cir.1994); *United States v. Bellrichard*, 994 F.2d 1318, 1321–22 (8th Cir.), *cert. denied*, 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993); *United States v. Maxton*, 940 F.2d 103, 105–06 (4th Cir.1991). A "true threat" is a statement that an ordinary, reasonable person, familiar with the context in which the statement was made, would interpret as a threat. *See Bellrichard*, 994 F.2d at 1323–24; *Maxton*, 940 F.2d at 106. Other courts, although not relying on a true threat analysis, have

---

4. The defendant stated, "And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts*, 394 U.S. at 706, 89 S.Ct. at 1400–01, 22 L.Ed.2d at 666. This remark was made at a rally in Washington, D.C., and elicited laughter from the crowd. *Id.* at 706–07, 89 S.Ct. at 1400–01, 22 L.Ed.2d at 666–67.

also held that threats are not protected by the First Amendment. *E.g., Masson v. Slaton*, 320 F.Supp. 669, 672 (N.D.Ga.1970) (stating First Amendment "does not extend to the threatening of terror, inciting of riots, or placing another's life or property in danger");*Lanthrip v. State*, 235 Ga. 10, 218 S.E.2d 771, 773 (1975) (holding terrorist threats to a person fall outside protected expression); *Thomas v. Commonwealth*, 574 S.W.2d 903, 909–10 (Ky.Ct.App.1978) (holding threats clearly without constitutional protection); *Commonwealth v. Green*, 287 Pa.Super. 220, 429 A.2d 1180, 1182–83 (1981) (holding threats inferior to interest in citizen welfare even if expression is involved). We agree with these courts and hold the First Amendment does not protect speech that constitutes a true threat.

■ Milner claims that an interpretation of section 712.8 that would encompass his statements necessarily results in an overbroad statute because his statements were not true threats, but were political speech protected by the constitution. *See Buckley v. Valeo*, 424 U.S. 1, 14–15, 96 S.Ct. 612, 632–33, 46 L.Ed.2d 659, 685 (1976) (stating the First Amendment "affords the broadest protection" to political expression). Milner relies on our decision in *Fratzke*, in which we held the State could not constitutionally punish an individual for criticizing the conduct of a state trooper, even when that criticism was offensive. *See Fratzke*, 446 N.W.2d at 785. In *Fratzke*, we concluded the defendant's statements were not "fighting words," but protected criticism of the government. *Id.*

In relying on *Fratzke*, Milner overlooks that the statements of dissatisfaction made in that case contained no fighting words or threats. In contrast, Milner's statements were not mere expressions of dissatisfaction with government employees; they were, as the trial court found, threats to place an explosive device in or near the DES building. *See Melugin*, 38 F.3d at 1484–85 (holding

evidence supported finding that private veiled threat of harm to judicial officer in order to obtain immediate jury trial was prohibited threat and not political hyperbole); *Tobias v. State*, 884 S.W.2d 571, 580 (Tex.Ct.App.1994) (holding defendant's threats directed at three specific justices were not mere political statements), *cert. denied*, 515 U.S. 1180, 116 S.Ct. 25, 132 L.Ed.2d 908 (1995). Milner's statements transcended mere criticism and threatened the personal safety of the DES employees. *See Smith v. State*, 532 So.2d 50, 53 (Fla.Dist.Ct.App.1988) (stating that although "public figures must expect criticism . . ., [t]hey need not . . . passively accept statements or conduct transcending mere criticism which threaten personal or family safety"). Therefore, the application of section 712.8 to the statements made by Milner do not implicate the regulation of political expression.

■ We have interpreted section 712.8 as reaching only true threats, not political speech. Our application of this statute to Milner's statements to DES employees is not at odds with this interpretation. Accordingly, section 712.8 is not impermissibly overbroad. *See Melugin*, 38 F.3d at 1485 (holding Alaska statute proscribing only true threats was not overbroad).

■ C. *Vagueness*. Milner also argues section 712.8 is vague as applied to his conduct.[5] "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983); *accord Hunter*, 550 N.W.2d at 463. As used in a vague-as-applied claim, this doctrine "simply means that criminal responsibility should not attach where one could not reasonably un-

---

5. Milner's vagueness claim is founded on the due process clauses of the Iowa and United States Constitutions. *See Kolender v. Lawson*, 461 U.S. 352, 353, 103 S.Ct. 1855, 1856, 75 L.Ed.2d 903, 906 (1983) (analyzing vagueness claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution). Because "the due process clauses of the Iowa and United States Constitutions are usually deemed to be identical in scope, import, and purpose," *see Harden v. State*, 434 N.W.2d 881, 886 (Iowa 1989), we will not separately discuss Milner's state due process claim.

derstand that his contemplated conduct is proscribed." *State v. Price,* 237 N.W.2d 813, 816 (Iowa 1976) (quoting *United States v. National Dairy Prods. Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561, 565–66 (1963)). Thus, we must consider whether Milner's conduct clearly falls within the proscription of the statute.

Milner complains that he had no way of knowing that his "vague reference to the Oklahoma City bombing" could be construed (1) as a threat, and (2) as referring to the use of an explosive. He points out the statute does not define the terms "threaten" and "explosive device."

"Despite the lack of an express definition, a statute is not unconstitutionally vague if the meaning of the words used can be fairly ascertained by reference to their ordinary and usual meaning, the dictionary, similar statutes, the common law, or previous judicial determinations." *Osmundson,* 546 N.W.2d at 909; *accord Hunter,* 550 N.W.2d at 465 ("A statutory term provides fair warning if the meaning of the word 'is to be fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning.' ") (quoting *State v. Kueny,* 215 N.W.2d 215, 217 (Iowa 1974)). Section 712.8 satisfies this requirement of definiteness. As discussed above, the terms "threaten" and "explosive device" as used in section 712.8 have their ordinary and common meanings. The dictionary, our prior cases and similar statutes make these meanings clear.

When the common meaning of the words used in section 712.8 are applied to Milner's conduct, it is obvious his statements fall within the prohibitions of the statute. As we pointed out earlier, Milner's statements went beyond a casual, isolated, and obscure reference to the bombing of a federal building in Oklahoma City. Considering his statements in the context in which they were made, a reasonable person would understand that Milner was threatening to blow up the DES building with a truck bomb, an explosive device. *See Bellrichard,* 994 F.2d at 1321 ("When determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression."); *Smith,* 532 So.2d at 53 (stating court should examine the totality of the circumstances to distinguish "true threats from crude hyperbole"). Milner's statements fell squarely within the statute's target of threats to use an explosive device and consequently, he cannot credibly claim he had no notice that his conduct was within the proscription of section 712.8. *See Osmundson,* 546 N.W.2d at 910 (holding dictionary definitions and commonly understood meaning of statutory language "provide[d] guidance to ordinary citizens and fair notice of what actions are proscribed"). Similarly, law enforcement authorities would find adequate guidance in the statutory language to easily conclude that Milner's statements fell within the statute's prohibitions. For these reasons, section 712.8 is not unconstitutionally vague as applied to Milner's conduct. *See Melugin,* 38 F.3d at 1486 (holding threat statute not vague where defendant's statement fell squarely within "the 'hard core of cases to which the ordinary person would doubtlessly know the statute unquestionably applies' ") (quoting *Stock v. State,* 526 P.2d 3, 9 (Alaska 1974)); *Masson,* 320 F.Supp. at 673 (holding threat statute was not vague); *Thomas,* 574 S.W.2d at 909 (same).

## V. Summary.

Section 712.8 proscribes statements that a reasonable person of average intelligence would construe as an expression of intention to place an incendiary, explosive, or destructive device or material in a place where it will harm people or property. There was substantial evidence to support the trial court's finding that Milner violated the statute.

True threats, the speech proscribed by section 712.8, are not constitutionally protected. Because the statute reaches only speech the State may regulate, the statute is not impermissibly overbroad. Nor is section 712.8 vague as applied to Milner's conduct, which clearly falls within the scope of the statute. Finding no error, we affirm.

**AFFIRMED.**