# IN THE SUPREME COURT OF IOWA

No. 08–0623

Filed May 20, 2011

**STATE OF IOWA,**

    Appellee,

vs.

**JEFFREY ALAN SOBOROFF,**

    Appellant.

---

Appeal from the Iowa District Court for Clinton County, J. Hobart Darbyshire, Judge.

Jeffrey Soboroff appeals his conviction for making threats in violation of Iowa Code section 712.8 (2007). **REVERSED AND REMANDED FOR NEW TRIAL.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Michael L. Wolf, County Attorney, for appellee.

**MANSFIELD, Justice.**

Jeffrey Soboroff was convicted following a jury trial of the offense of "threats" in violation of Iowa Code section 712.8 (2007) after posting on his website a slideshow entitled "Target for Tonight." The slides included a photograph of a city's water tower, references to putting Thorazine in the city's water supply, and photographs of certain residents of the city with a caption expressing the view that these individuals "could use some medication."

On appeal, Soboroff argues that section 712.8, which prohibits threats to place "any destructive substance" where it will endanger people, does not apply to the potential contamination of a city water supply with a psychotropic drug. Soboroff also contends his trial counsel was constitutionally ineffective for not moving for a judgment of acquittal because Soboroff did not make a "true threat," i.e., a threat that a reasonable person of ordinary intelligence would have understood as such. Additionally, Soboroff argues his counsel should have requested an instruction that would have required the jury to find the elements of a "true threat."

We hold section 712.8 can cover threats to contaminate a water supply with a psychotropic drug. Also, there was substantial evidence Soboroff made statements that would be understandable as threats by a person of reasonable intelligence. However, we agree with Soboroff that he received ineffective assistance when his counsel failed to ask for an instruction requiring the jury to find a "true threat." While there was evidence that Soboroff's threats were real, there was also evidence from which a jury could have concluded his statements were not real threats, and this issue should have been squarely presented to the jury. Therefore, we reverse and remand for a new trial.

## I. Background Facts and Proceedings.

Based upon the testimony and other evidence presented at trial, a jury could have found the following facts.

The City of Calamus water system serves approximately 400 residents and an additional 350 people when the elementary school located in the city is in session. In November 2007, the Calamus water system included a 128-foot tall water tower and a reservoir tank.

Duane Levien managed public works for Calamus. In that position, Levien oversaw the water system for Calamus. Levien checked, recorded, and refilled the chlorine, phosphate, and residual levels within the water supply daily. He also measured the amount of water pumped daily and maintained the necessary paperwork for the State. Levien usually injected about a half gallon of chlorine into the water system a day, but if he was in the process of "shocking the system," he could "dump a hundred pounds of granule in . . . just a matter of twenty minutes."

On the morning of Monday, November 12, 2007, Levien was approached by an unnamed citizen and handed a printout from an internet website known as "freeworldkgb." The printout was of a slideshow entitled "Target for Tonight." The first slide contained a photograph of the Calamus water tower with the text, "I am thinking that if we drop enough Thorizine (sic) in the city water supply it might calm the population down enough so that they wont (sic) call us n-----s anymore, or dumb Jew n-----s." The second slide had a photograph of a toad and said that "with his help, freeworldkgb has procured 500 pounds of Thorizine (sic)." Subsequent slides contained candid photographs of three city residents with various comments, including a statement, "I

have decided that they could use some medication." It was stipulated that the "freeworldkgb" website belonged to Soboroff.

Levien knew Soboroff as someone who had both made and been the subject of numerous complaints within the community. Levien had signed a petition to have Soboroff civilly committed in June or July 2007. It was also fairly common knowledge in Calamus that "freeworldkgb" was Soboroff's website.

Levien believed that "Target for Tonight" was a reference to the previous night. He contacted the Clinton County Sheriff's Office and the regional field office for the Iowa Department of Natural Resources. Levien then flushed the entire Calamus water system and drained all of the water out of the tower and the reservoir tank, a process that took approximately five to six hours. Levien did not take a sample of the water to test whether any Thorazine had actually been placed into the water tower or the reservoir tank.

Clinton County Deputy Tom Christoffersen responded to Levien's initial call. After being shown the slideshow printout, Deputy Christoffersen went to speak with Soboroff at his residence in Calamus. Deputy Christoffersen recorded his conversation with Soboroff using the audio from his in-car camera. This recording was played for the jury. The recording began with Soboroff stating, "I'm not f---ing around with anybody anymore. I'm tired of these a--holes." When Deputy Christoffersen later disclosed that someone had made a complaint, Soboroff said, "F---'em! I put that on there to irritate them, and I'm glad they're irritated." The recording then ended with Soboroff stating that he did not believe he had crossed the line and, if the sheriff's office did, they could call his attorney.

On November 14, 2007, a search warrant was executed at Soboroff's residence. Soboroff was present and recorded the events with a handheld video camera. Later, he posted the recording on the internet, and it was played for the jury as well. During the video, Soboroff acknowledged twice that the officers were looking for 500 pounds of Thorazine. When the officers informed Soboroff they were seizing his computer, Soboroff questioned why, and then stated, "Look, that is a satirical article, that's all that that is." The background image on Soboroff's computer was a picture of the Calamus water tower. The officers did not find any Thorazine during the search.

On November 20, 2007, the State charged Soboroff by trial information with threats in violation of Iowa Code section 712.8.[1] On March 7, 2008, Soboroff moved to dismiss the trial information on the ground there was no evidence in the minutes of testimony that he had made a threat involving "any incendiary or explosive device or material, or any destructive substance or device in any place where it will endanger persons or property" as required by section 712.8. The district court denied the motion, ruling that it was untimely and, alternatively, that section 712.8 was not limited to incendiary or explosive types of devices and materials. The case proceeded to trial on March 10 and 11, 2008.

In addition to presenting the testimony of Levien and the two sheriff's deputies who had handled the investigation, the State also introduced the testimony of a pharmacist, Cynthia Ryan. Ryan testified that Thorazine is a psychotropic drug commonly used to treat mental or mood disorders, especially schizophrenia. She stated the common side

---

[1]The State also charged Soboroff with unlawful possession of a prescription drug in violation of Iowa Code section 155A.21, but this charge was dismissed before trial.

effects for Thorazine include drowsiness, dizziness, blurred vision, and constipation, with less common side effects including a malignant syndrome that can cause a high temperature, muscle rigidity, irregular heartbeats, tardive dyskinesia (involuntary muscle spasms), and possibly even death. Ryan testified it would be impossible to predict what would happen if Thorazine were added to a city's water supply, but it was her opinion that "any use of a drug that is improper I would consider dangerous . . . . Drugs are only appropriate when prescribed for a particular patient for a particular condition." Ryan further testified Thorazine is not a controlled substance, but is restricted to "purchase by order of prescription." Ryan estimated that a single prescription would provide about 30 tablets of Thorazine ranging from 10 to 100 milligrams. Ryan further opined that it would be "near impossible" to obtain 500 pounds of Thorazine even with a relatively long period of time to do so.

After the State rested its case, Soboroff's counsel moved for a judgment of acquittal, renewing his arguments in the motion to dismiss and asserting there was "no evidence presented by the State" to establish the alleged threat involved a substance covered by section 712.8. The district court denied the motion. After further discussion, the following dialogue ensued:

> MR. VILMONT:    And are we to conclude, Your Honor, that the State has proven in this case up to this point in time that Thorazine is a destructive substance?
>
> THE COURT:    The Court finds the State has provided sufficient evidence to make a prima facie case so that the jury should consider the issue, yes.

Soboroff then took the stand in his own defense and testified in a rambling way. Soboroff maintained that the slideshow was "a story" and "a metaphor." Soboroff gave the jury the following explanation for why he had posted the slideshow:

> I wrote this story about a toad who is down at the river mourning the loss of his friend because some individual, either an adult or a child, took a firecracker, put it in the animal's cloaca and blew it up. Now I – I like animals. One of my things in college was herpetology. I saw this there. My dog – I got this Rottweiler who wouldn't hurt a soul, and he's there, and he's looking at this thing blown up, and he's looking at me, and he's just really puzzled.
>
> This was right after I got out – out of Mercy Hospital. And I'm sitting on my stoop, and out comes Mr. Toad. And he would sit with me at night, and I started imagining this dialogue between me and Mr. Toad. And Mr. Toad wants to get even for the death of his friend . . . .

Soboroff further testified that he used the title "Target for Tonight" because "Toads come out at night." Soboroff also stated that he had suffered a closed head injury and for the last twelve years had been seeing a psychologist, Dr. Frank Gersch, but had not been prescribed any medications by him.

The case was submitted to the jury. In the marshalling instruction, the jury members were told they had to find the following elements to convict Soboroff:

1. On or about November 12, 2007, Defendant threatened to place a destructive substance in the water supply for the city of Calamus, Iowa.
2. The destructive substance was of a type that would endanger persons or property.
3. Defendant made the threats willfully and unlawfully.

A jury instruction, to which Soboroff objected, defined "destructive" as meaning "damaging, harmful, detrimental or injurious." Another instruction, to which Soboroff did not object, defined "threaten" to mean "intimidate, bully, pressure, menace, warn, terrorize or make threats."

On March 11, 2008, the jury returned a guilty verdict. Soboroff was sentenced to a term of incarceration not to exceed five years. *See* Iowa Code § 902.9(5). The sentence was suspended, and Soboroff was placed on probation for two years. *See id.* § 907.3(3).

Soboroff appeals. He contends there is insufficient evidence to sustain his conviction because section 712.8, which is part of the "arson" chapter of the Iowa Code (chapter 712), applies only to threats or attempts involving materials that might cause fires or explosions, not to materials whose harmful effects occur when they are consumed within the human body. He further alleges his counsel was ineffective for: (1) failing to move for a judgment of acquittal on the grounds that the State failed to prove Soboroff made a "true threat," i.e., a threat that would have been interpreted by a reasonable person as such; (2) failing to request a jury instruction defining the legal requirements of a "true threat"; and (3) failing to call Dr. Gersch as a witness.

## II. Standard of Review.

We review challenges to the sufficiency of the evidence for the correction of errors at law. *State v. Hennings,* 791 N.W.2d 828, 832 (Iowa 2010). We will uphold the jury's verdict if supported by substantial evidence. *State v. McCullah,* 787 N.W.2d 90, 93 (Iowa 2010). "Substantial evidence is evidence that 'would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Jorgensen,* 758 N.W.2d 830, 834 (Iowa 2008)). We view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record. *Hennings,* 791 N.W.2d at 832–33. The evidence must at least raise a fair inference of guilt and do more than raise mere suspicion, speculation, or conjecture. *McCullah,* 787 N.W.2d at 93. To the extent the insufficiency claim involves the district court's construction of a statute, our review remains for the correction of errors at law. *Id.*

### III. Applicability of Section 712.8 to Thorazine in Drinking Water.

Iowa Code section 712.8 provides:

> Any person who threatens to place or attempts to place any incendiary or explosive device or material, or any destructive substance or device in any place where it will endanger persons or property, commits a class "D" felony.

Soboroff maintains he did not violate section 712.8 because Thorazine is not a "destructive substance." Soboroff insists that the term "destructive substance" as used in the second part of section 712.8 should be limited to items that might be used to commit the crime of arson as defined in section 712.1. He urges that "destructive substance" should be construed as something similar to "incendiary or explosive" material as referenced in the first part of section 712.8. By contrast, the State argues Thorazine was a "destructive substance or device" in this case because it could ruin the water supply and endanger people.

The primary goal in interpreting a statute is to ascertain and give effect to the legislature's intent. *State v. Anderson*, 782 N.W.2d 155, 158 (Iowa 2010). When determining legislative intent, we look first to the language of the statute. *State v. Sluyter*, 763 N.W.2d 575, 581 (Iowa 2009). We also consider " 'the statute's "subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations." ' " *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006) (quoting *Cox v. State*, 686 N.W.2d 209, 213 (Iowa 2004)). Legislative intent is gleaned from the words chosen by the legislature, not what it should or might have said. *State v. Stone*, 764 N.W.2d 545, 549 (Iowa 2009). When a statutory definition is absent, " '[w]e may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage' to

determine its meaning." *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (quoting *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996)).

We assess a " 'statute in its entirety, not just isolated words or phrases,' and we will seek to interpret it so that no part of it is rendered redundant or irrelevant." *McCullah*, 787 N.W.2d at 94 (quoting *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006)). We strive for " 'an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results.' " *State v. Spencer*, 737 N.W.2d 124, 130 (Iowa 2007) (quoting *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006)).

The General Assembly has not told us what they meant by "destructive substance or device." But the word "destructive" is broad. It is defined by one dictionary as "having the capability, property, or effect of destroying." *Webster's Third New International Dictionary* 615 (unabr. ed. 2002). "Destroy" is then defined as: "to ruin the structure, organic existence, or condition of." *Id.*

Many things are thus potentially "destructive." The statute does not limit the definition to substances that cause harm through a chemical reaction outside the human body, as opposed to a metabolic reaction within it. Destruction can result from contamination as well as from burning or wrecking. *See* 18 U.S.C. § 31(a)(3) (2006) (defining "destructive substance" to mean "an explosive substance, flammable material, infernal machine, or other chemical, mechanical, or radioactive device or matter of a combustible, *contaminative*, corrosive, or explosive nature") (emphasis added); *United States v. Jones*, 308 F.3d 748, 749–50 (7th Cir. 2002) (holding that real anthrax spores would have been a "destructive substance" within the meaning of this statute and, therefore, an individual who staged phony anthrax incidents violated the federal "Bomb Hoax Act").

Soboroff's argument also runs contrary to the principle that we try to avoid construing statutory language as superfluous. *See* Iowa Code § 4.4(2); *State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003) (stating statutes are interpreted in a manner to avoid rendering any part of the enactment superfluous). If the second part of section 712.8 were limited to the kinds of materials covered by the first part, there would be no need for it. In fact, the second part is worded as an *alternative* to the first part. Threats involving "any incendiary or explosive device or material, *or* any destructive substance or device," are prohibited. Iowa Code § 712.8 (emphasis added); *Cole v. Laucamp*, 213 N.W.2d 532, 535 (Iowa 1973) ("[T]he word 'or' . . . has a commonly accepted and well-known meaning. In ordinary usage it signifies an alternative . . . ."). Hence, we do not discern within the statutory language a basis for limiting its scope to materials that might cause fires or explosions; rather, we see the opposite. Some materials are destructive but not incendiary or explosive; some incendiary materials might not be considered destructive; but regardless, the legislature intended that all be covered when there was a threat or attempt to place them in a location where they would endanger persons or property.

It is true that section 712.8 is part of a chapter entitled "Arson," and what Soboroff did would not have been considered a threat to commit common law arson. *Veverka v. Cash*, 318 N.W.2d 447, 450 (Iowa 1982) (noting that the common law definition of arson required a "willful and malicious burning"). Section 712.8's presence in the arson chapter, however, is largely a historical accident. When the threats statute was first enacted in 1967, it was placed in chapter 697, entitled, "Injuries by Explosives—Bomb Threats." *See* 1967 Iowa Acts ch. 412, § 2 (codified at Iowa Code § 697.7 (1971)). Later, during the complete revision of the

Iowa Criminal Code effective January 1, 1978, the threats statute was modified and moved to the arson chapter. 1976 Iowa Acts ch. 1245, ch. 1, § 1208 (codified at Iowa Code § 712.8 (Supp. 1977)).[2]

Thus, the present arson chapter (712) includes not only sections 712.1 through 712.6, which appear to be arson-related laws that address only fires, explosions, and "incendiary or explosive" materials and devices, but also sections 712.7 and 712.8, covering "false reports" and "threats." Unlike the preceding provisions in chapter 712, sections 712.7 and 712.8 apply to materials that are "destructive," as well as those that are "incendiary or explosive." If anything, the difference in wording between sections 712.1 through 712.6, on the one hand, and sections 712.7 and 712.8, on the other, not to mention their separate ancestry, supports a broader interpretation of the latter provisions.

For these reasons, we agree with the district court that section 712.8 can cover a threat to put large quantities of a psychotropic drug into a town's water supply. This kind of threat, like a threat to release radioactive—but not incendiary or explosive—matter, can be viewed by a fact finder as involving a "destructive substance." Substantial evidence therefore supports a jury finding that Soboroff's statements on his website related to the placement of a destructive substance in a place where it would endanger people.

---

[2]Because of this history, we believe it would be inappropriate to draw an inference about what section 712.8 means from the chapter in which it is located. *Cf. Rolfe State Bank v. Gunderson,* 794 N.W.2d 561, 567 (Iowa 2011) (expressing the view that a provision added to a division of the Iowa Banking Act dealing with bank mergers was meant to apply to bank mergers and not to bank transactions more generally).

**IV. Sufficiency of Evidence that Soboroff Made a "True Threat."**

Soboroff next argues his counsel was constitutionally ineffective when he failed to move for a judgment of acquittal on the ground that the evidence failed to show his website communications were a "true threat," i.e., "understandable as a threat by a reasonable person of ordinary intelligence." *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997). Soboroff must make this appellate argument under the ineffective assistance rubric because, although his counsel argued for a judgment of acquittal based on the lack of a "destructive substance," his motion in the district court did not claim the absence of a "true threat." *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (holding a motion for judgment of acquittal does not preserve error when counsel does not make reference to the specific elements of the crime on which the evidence was claimed to be insufficient). Before us, Soboroff now contends that no reasonable juror could conclude he had made a "true threat" and that his slideshow was not meant to be taken seriously.

To establish ineffective assistance of counsel, Soboroff must demonstrate by a preponderance of the evidence: (1) his counsel failed to perform an essential duty, and (2) prejudice resulted. *State v. Vance*, 790 N.W.2d 775, 785 (Iowa 2010); s*ee also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).

Generally, claims of ineffective assistance of counsel are preserved for postconviction relief proceedings. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). We do this so an adequate record of the claim can be developed and the attorney charged with providing ineffective assistance may have an opportunity to respond to defendant's claims. *Id.* However, if we determine the record is adequate, we may resolve the claim on

direct appeal. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We believe the record is adequate to address this claim. We decide de novo whether Soboroff's trial counsel was constitutionally ineffective. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

In *Milner*, we were called upon to review section 712.8 in the context of an angry citizen who had been denied unemployment benefits and repeatedly said he would drive his truck to the Department of Employment Services Office and blow it up. 571 N.W.2d at 9. The incident occurred shortly after the 1995 Oklahoma City bombing and Milner at one point referred to that bombing. *Id.* In upholding Milner's conviction for violating section 712.8, we held the statute covered only "true threats," that is, statements that would be viewed as a threat by a reasonable person of ordinary intelligence when the statement is viewed in light of the surrounding circumstances. *Id.* at 10. We made clear that the statute "does not reach expressions that a reasonable person would understand as a joke, idle talk, or mere statements of political hyperbole." *Id.* In addition to finding sufficient evidence to support Milner's conviction, we also held that section 712.8 was not constitutionally infirm, since it extended only to "true threats" and such threats were not protected by the First Amendment. *Id.* at 13–14.

We do not believe Soboroff's trial counsel failed to perform an essential duty here. Even if he had moved for a judgment of acquittal on the ground that his client had not made true threats, the motion would have had to be denied. In this case, the State presented "sufficient evidence for a reasonable jury to find 'a reasonable person of ordinary intelligence would interpret [Soboroff's] statement as a threat . . . in light of the surrounding circumstances.'" *State v. Lane*, 743 N.W.2d 178, 183–84 (Iowa 2007) (quoting *Milner*, 571 N.W.2d at 10).

Although Soboroff claimed at trial that his "Target for Tonight" slideshow was not to be taken literally, a reasonable jury could have found otherwise. The initial slide showed a photograph of the water tower with a specific comment about contaminating the city water supply with Thorazine. Next, there was a photograph of a toad with an indication that "with his help [Soboroff] has procured 500 pounds of Thorizine (sic)." The toad photograph could have been viewed as a reference to a confidential source of the material. Several candid shots of citizens followed, with the last slide including the statement, "I have decided that they could use some medication." The State's most compelling piece of evidence, perhaps, was Levien's testimony that, after he saw the slideshow, he flushed out the city's entire water supply, a process that took five to six hours. This shows, at a minimum, that *he* took the threat seriously.

Hence, the district court properly submitted the section 712.8 charge to the jury, and Soboroff's counsel was not ineffective for failing to move to acquit on the ground that a reasonable person could not have viewed Soboroff's statements as a threat. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("[C]ounsel has no duty to raise an issue that has no merit.").

## V. Jury Instruction Defining "Threat."

Soboroff also contends his counsel was ineffective for not requesting a jury instruction that defined threat and made it clear to the jury that he could be found guilty only if he committed a "true threat." The State concedes that such an explanation should have been provided to the jury. However, it argues that Soboroff did not suffer prejudice, because the evidence that a reasonable person would view Soboroff's statements as a threat was overwhelming.

We disagree. While there was substantial evidence of a real threat, there was also evidence from which a jury could have concluded that Soboroff's statements were "idle talk." *Milner,* 571 N.W.2d at 10. The State's own expert testified that Thorazine is available only by prescription and in small quantities. It would be "near[ly] impossible" to obtain 500 pounds of it. Someone who claimed to have such a quantity might not have deserved to be taken seriously. Also, there was no evidence that Soboroff intentionally disseminated his statements to anyone, apart from putting them on his website. And, although it is a double-edged sword, Soboroff's reputation for instability could have supported a jury finding that a reasonable person would not take his statements seriously (although it could have potentially warranted the opposite conclusion). In short, had the jury been instructed on the "reasonable person" standard for illegal threats, we think there is a reasonable probability the outcome of Soboroff's trial would have been different. *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; *State v. Palmer,* 791 N.W.2d 840, 850 (Iowa 2010) (noting also that the reasonable probability test for prejudice requires only a showing that the probability of a different result is "sufficient to undermine confidence in the outcome") (quoting *Strickland*).

Accordingly, we hold that Soboroff received ineffective assistance of counsel when his attorney failed to request an instruction that defined "threats" for the jury as statements that would be understandable by a reasonable person of ordinary intelligence as threats, in light of the surrounding circumstances. *Milner,* 571 N.W.2d at 10. Because section 712.8 criminalizes a category of speech, without any conduct requirement, *see id.* at 13 (noting that section 712.8 targets speech), it is important for the jury to be advised of its limited, proper scope. This

insures that defendants will be found guilty only for making statements not protected by the First Amendment. *Id.* at 13–14 (stating "the First Amendment does not protect speech that constitutes a true threat" and, when interpreted as limited to true threats, section 712.8 is not overbroad). Our views on this subject coincide with those of a number of other jurisdictions. *See State v. Cook*, 947 A.2d 307, 317–18 (Conn. 2008) (finding the omission of a "true threat" instruction required remand for new trial to ensure punishment was not based on constitutionally protected speech); *State v. Martins*, 102 P.3d 1034, 1042–43 (Haw. 2004) (same); *Abbott v. State*, 989 A.2d 795, 823–26 (Md. Ct. Spec. App. 2010) (same); *State v. Schaler*, 236 P.3d 858, 865–67 (Wash. 2010) (same); *State v. Perkins*, 626 N.W.2d 762, 772–73 (Wis. 2001) (same). We therefore reverse Soboroff's conviction and remand for a new trial.[3]

**VI. Conclusion.**

For the foregoing reasons, we find sufficient evidence to sustain Soboroff's conviction for making threats in violation of section 712.8. However, because the jury was not instructed that the threats had to be understandable by a reasonable person of ordinary intelligence as such, Soboroff received ineffective assistance of counsel and is entitled to a new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**

---

[3]Soboroff also argues on appeal that his counsel was ineffective for not calling as a witness Dr. Gersch, Soboroff's attending psychologist. In light of our disposition of the appeal, we need not reach this claim.