# IN THE COURT OF APPEALS OF IOWA

No. 19-1142
Filed May 12, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM RILEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer,

Judge.


        William Riley appeals following his conviction for sexual abuse in the third

degree. **AFFIRMED.**


        Seth Harrington of Harrington Law LC, Urbandale, for appellant.

        Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.


        Considered by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

William Riley appeals his conviction for sexual abuse in the third degree in violation of Iowa Code section 709.4(1)(a) (2017). On appeal, Riley argues: (1) there was insufficient evidence to establish the elements of third-degree sexual abuse; (2) his trial counsel was ineffective for failing to move for dismissal based on lack of venue; and (3) the district court erred in allowing part of a witness's testimony. We affirm.

## I. Background Facts and Proceedings[1]

On September 14, 2017, Riley moved into the apartment next to J.S.[2] Riley introduced himself to J.S. and asked if J.S. could help him set up his cable television. Riley also asked J.S. if he knew "any stores around here." Riley and J.S. visited various retail stores in the area together. After dropping off Riley's purchases at Riley's apartment, they ordered a pizza at a convenience store nearby. Riley paid for the pizza and returned to his apartment. J.S. waited for the pizza to bake. After the pizza was ready, J.S. went back to Riley's apartment.

After J.S. returned to Riley's apartment with the pizza, Riley sexually abused him. Riley placed his fingers inside J.S.'s anus. Riley then placed his penis inside J.S.'s anus. J.S. told Riley he was in pain and told Riley to stop. J.S. also tried to leave Riley's apartment once, but Riley stopped him. Riley grabbed J.S, threw him back on the bed, and held J.S.'s hands behind his back. Riley

---

[1] We review the evidence in the light most favorable to the verdict. *See State v. Warren*, 955 N.W.2d 848, 856 (Iowa 2021).

[2] J.S. is a thirty-three-year-old male diagnosed with bipolar disorder, attention deficient hyperactivity disorder (ADHD), fetal alcohol syndrome, and cerebral palsy.

resumed anal intercourse as J.S. kept telling him to stop. Riley continued until he ejaculated inside J.S.'s anus.

The next day, J.S. told a neighbor what happened. J.S. then contacted the police. That same day, a police officer interviewed J.S. The officer told J.S. "to think it over really hard if I can press charges." The officer gave J.S. his card and told him to call back in two days if he wanted to press charges.

On September 17, J.S. again called the police to report that Riley sexually abused him three days before. After telling two other police officers what happened, J.S. went to the hospital for a sexual-assault examination. Anal swabs were taken from J.S. Sperm was detected on J.S.'s anal swab. A DNA profile was produced from the sperm. It matched Riley's DNA profile.

Police also made contact with Riley. Eventually, Riley agreed to an interview at the Waterloo police station. Riley denied any kind of sexual relations between himself and J.S. When police told Riley that J.S. was accusing him of sexual assault, Riley specifically told the inquiring officer to "check the DNA in his ass."

The State charged Riley with sexual abuse in the third degree. After a bench trial, the district court found him guilty as charged. Riley appeals.

**II. Analysis**

On appeal, Riley challenges: (1) the sufficiency of the evidence; (2) effectiveness of his trial counsel; and (3) part of a witness's testimony.

**A. Sufficiency of the Evidence**

We begin with Riley's challenge to the sufficiency of the evidence supporting his conviction for sexual abuse in the third degree. Section 709.4(1)(a) provides "[a] person commits sexual abuse in the third degree when the person performs a sex act" that "is done by force or against the will of the other person." A "sex act" is defined to include "[p]enetration of the penis into the vagina or anus." Iowa Code § 702.17(1). Riley claims the evidence is insufficient to establish the sex act was "[b]y force or against the will of J.S."

Under Iowa law, we will "uphold a verdict if substantial evidence supports it." *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005); *see State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018) ("We review the sufficiency of the evidence for correction of errors at law."). Evidence is "substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). "We view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record." *State v. Soboroff*, 798 N.W.2d 1, 5 (Iowa 2011). We give weight to the district court's fact findings, especially with regard to witness credibility. *See Paxton v. Paxton*, 231 N.W.2d 581, 584 (Iowa 1975) ("Understandably[, the] trial court was in a better position than are we to observe the conduct of all witnesses, including the parties hereto, and determine the credibility of their testimony.").

Riley points to multiple inconsistencies in J.S.'s deposition and trial testimony. Specifically, Riley notes J.S. was inconsistent about: (1) when J.S.

returned to J.S.'s apartment; (2) whether J.S. had his cell phone while in Riley's apartment; (3) who J.S. was speaking to on his cell phone in Riley's apartment; (4) whether J.S. ate any pizza or lost his appetite; and (5) when J.S. tried to leave Riley's apartment. Riley claims these inconsistencies mean that "[n]o reasonable fact finder could consider J.S. a credible source of information." And because "the words of J.S." are "[t]he only evidence" to show the sex act was by force or against J.S.'s will, Riley claims there was insufficient evidence to prove this element.

The State acknowledges that J.S.'s "testimony contained several inconsistencies on collateral matters." But, as the State points out, "[t]he trial court, as the factfinder, was aware of [J.S.]'s cognitive abilities and took that fact into account when evaluating his credibility." And in the end, the court found that J.S. was consistent and credible on the details of Riley's sexual abuse.

Giving appropriate weight to the district court's findings on credibility, we conclude substantial evidence supports these findings by the district court:

> Given [J.S.]'s disabilities and the fact that he can be directed easily by other, more assertive persons without similar intellectual limitations—as demonstrated by his manner of responding to questions—the court does not find that the inconsistencies in [J.S.]'s accounts of the events from September 14 through September 17, 2017 or the way he responded to [Riley]'s actions renders [J.S.]'s testimony completely unbelievable and unreliable. [J.S.] consistently stated that after [Riley] put his penis in [J.S.]'s anus the first time, [J.S.] told [Riley] it was starting to hurt, told [Riley], "Please, take it out," and told [Riley] to stop more than once. [Riley] did not stop. [J.S.] then tried to go to the door of [Riley]'s apartment and leave. [Riley] grabbed [J.S.], took him back to the bed, inserted his penis into [J.S.]'s anus again, and did not stop until he ejaculated, even though [J.S.] continued to tell [Riley] to please take it out. The court is firmly convinced that on or about September 14, 2017, [Riley] used his penis to penetrate [J.S.]'s anus twice and that [Riley] proceeded with both of those sex acts against the will of [J.S.]. The court is convinced that [J.S.] told [Riley] to stop, but [Riley] did not, and that

[Riley] continued to perform the anal sex acts against [J.S.]'s wishes and against his express direction.

Sufficient evidence supports Riley's conviction.

## B. Ineffective Assistance of Counsel

Next, Riley claims his trial counsel was ineffective for failing to move for dismissal based on the State's failure to establish venue. But in 2019, the Iowa legislature amended section 814.7 (Supp. 2019) to preclude ineffective-assistance claims on direct appeal. *See* 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7). Our supreme court has held that these amendments apply to judgments and sentences entered on or after July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 233 (Iowa 2019); *see also State v. Damme*, 944 N.W.2d 98, 109 (Iowa 2020) ("Section 814.7 became effective on July 1, 2019, and the judgment and sentence in Damme's case was entered on that date. . . . The amendment applies and we lack authority to consider her ineffective-assistance-of-counsel claims on direct appeal." (citation omitted)). The court entered judgment and sentence on July 1, 2019. So section 814.7 precludes our consideration of Riley's ineffective-assistance claim.

## C. Witness Testimony

Lastly, Riley contends the district court erred in allowing certain testimony by the emergency room nurse who examined J.S. We generally review evidentiary rulings for an abuse of discretion. *See State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). "The standard of review for hearsay, however, is for errors at law." *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020).

At trial, the nurse testified without objection that the process of examining a patient for a sexual assault starts with "get[ting] a history of the allegations or what has brought the patient in, more specifically, and then begin[ning] my [physical] exam." The nurse was then asked "why is it important for you to find out the allegations or what brought that patient in for that exam?" Riley objected that "[t]hese types of questions are beyond the scope of the minutes." The district court overruled Riley's objection. The nurse then explained that it is important to "know what parts of the body to examine; and if there [is] any type of injury or anything like that, I would pass that on to the provider; and also so I know where to collect evidence from, if any." She also testified without objection:

> Q. And so do you then rely on what the patient has told you in order to conduct your examination? A. Yes.
> Q. And do you tailor your exam based on what information was provided to you? A. Yes.
> Q. And so when you're discussing with them the allegations, is it important for you to know medically what body parts of theirs were touched? A. Yes, so I know where to look.
> Q. And is it important for you to know if ejaculation had occurred? A. Yes, so I know both what kind of medications to give for possible STD exposure and also for evidence collection.
> Q. After you would receive that information, I believe you stated you would then perform your physical exam? A. That's correct.

The nurse went on to explain, without objection, the physical process for collecting evidence in a sexual assault case.

Then the nurse was asked if she met with J.S. and "ask[ed] him to provide" his "history of what had occurred." The nurse answered in the affirmative. The nurse was then asked what information J.S. provided. Riley objected to this question as "[h]earsay and cumulative." The court overruled both objections. The

nurse then read a portion of her report detailing J.S.'s history of the alleged assault. She went on to testify about her physical examination of J.S.

On appeal, Riley claims portions of the nurse's testimony (1) went beyond the scope of the minutes, (2) were improper expert testimony, and (3) were hearsay. We address each claim in turn.

*1. Beyond the scope of the minutes*

First, we address whether testimony should have been excluded as beyond the scope of the minutes. Iowa Rule of Criminal Procedure 2.5(3) provides:

> The prosecuting attorney shall, at the time of filing such information, also file the minutes of evidence of the witnesses which shall consist of a notice in writing stating the name and occupation of each witness upon whose expected testimony the information is based, and a full and fair statement of the witness' expected testimony.

The purpose of the rule is to eliminate claims of foul play and provide meaningful minutes from which a defense can be prepared. *See State v. Ristau*, 340 N.W.2d 273, 274 (Iowa 1983). But "[t]he minutes need not list each detail to which a witness will testify." *State v. Ellis*, 350 N.W.2d 178, 181 (Iowa 1984). "[T]here is no requirement that the minutes of testimony provide a complete catalogue of witness testimony at trial, but only that the defense be placed on fair notice and not subject to surprise testimony." *State v. Shorter*, 893 N.W.2d 65, 81 (Iowa 2017). So "a defendant is not entitled to relief due to defective minutes under rule 2.5(3) when the defense is not surprised by the subsequent testimony." *Id.* at 83. "[W]hen the challenged minutes, though incomplete, put defendant 'on notice of the necessity of further investigation of the witness'[s] probable testimony,'

reversal need not follow admission of matters they do not disclose." *State v. Musso*, 398 N.W.2d 866, 868 (Iowa 1987) (citation omitted).

Here, the minutes stated:

> This witness will testify as to her education, training and experience as a nurse dealing with the examination of sexual assault victims. This witness will testify as to obtaining specimens for a sexual assault evidence collection kit. This witness will testify as to what specimens were collected. *This witness will testify to the manner, method and procedure in which said specimens were collected as part of said sexual assault evidence collection kit.* This witness will testify identify and introduce into evidence said specimens collected pursuant to sexual assault evidence collection kit. This witness will testify, identify and introduce into evidence said specimens obtained as part of the sexual assault evidence collection kit. This witness will testify to the chain of custody of said items collected pursuant to said sexual assault evidence collection kit.

(Emphasis added.)

As mentioned, Riley objected to the State's question about "why is it important" for the nurse "to find out" the alleged victim's "allegations or what brought that patient in for that exam." Riley claimed such questions were "beyond the scope of the minutes." The district court overruled the objection. We think that was the correct ruling.

The minutes plainly disclosed that the nurse would testify about the "manner, method and procedure" through which specimens of sexual assault evidence were collected from J.S. Consistent with these minutes, the nurse testified about the general process for collecting sexual assault evidence and the specific process she went through with J.S. As the nurse's testimony made clear, obtaining the patient's history of the alleged sexual assault is an essential part of the "manner, method and procedure" in which specimens are collected. By

learning how the assault happened—including "what body parts . . . were touched" and what injuries were sustained—the nurse can "know where to look" for evidence of the assault. We doubt this would surprise most adults. In any event, we do not think it came as a surprise to Riley or counsel. Although the minutes did not specifically state that taking J.S.'s history of the sexual assault was part of the "manner, method and procedure" for collecting evidence of the sexual assault, we still believe "[t]he minutes adequately alerted [Riley] generally to the source and nature of the evidence [the nurse] would give against him." *Ellis*, 350 N.W.2d at 182*; see also Ristau*, 340 N.W.2d at 274–75 (complaining witness's conversation with defendant not mentioned in the minutes but was deemed consistent with overall nature of witness's testimony). The district court did not abuse its discretion by overruling Riley's scope-of-the-minutes objection.[3]

---

[3] Riley suggests that because his counsel raised a scope-of-the-minutes objection to one question, he effectively raised the same objection to all other related questions. We disagree. Our opinion in *State v. Huffman*, No. 14-1143, 2015 WL 5278980, at *4 (Iowa Ct. App. Sept. 10, 2015), is on point or nearly so. Like Riley, Huffman was convicted of sexual abuse. *See Huffman*, 2015 WL 5278980, at *1. On appeal, Huffman sought to attack a whole series of questions and answers. *See id.* at *4. At trial, though, Huffman's counsel had only "objected to only one of [those] questions." *Id.* We concluded Huffman had only preserved error on the question to which trial counsel objected. *Id.* Then-Chief Judge Danilson explained:

> "A timely and specific objection is required to alert the judge to the issue raised and enable opposing counsel to take corrective action to remedy the defect if possible." *Roberts v. Newville*, 554 N.W.2d 298, 300 (Iowa Ct. App. 1996). "Generally, the proper timing of an objection follows the question propounded, since the question generally reveals whether inadmissible evidence is requested." *Id.* Moreover, Huffman's attorney did not request nor receive a standing objection to the testimony. *See Prestype Inc. v. Carr*, 248 N.W.2d 111, 117 (Iowa 1976) ("Although a standing objection may save trial time and be convenient for both court and counsel, it makes appellate review infinitely more difficult and, for the litigants more

*2. Improper expert testimony*

Next, Riley complains that the nurse "was allowed to testify to her professional opinions on a number of subjects, including her belief that the absence of injuries to J.S.'s anus was not probative" and "whether or not the sexual act was consensual."  But Riley did not raise—and the district court did not rule on—whether the nurse could testify as an expert witness.  So Riley failed to preserve error.  *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883 (Iowa 2014) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

*3. Hearsay*

Lastly, in his reply brief, Riley reasserts his hearsay objection made at trial.  But we do not generally consider arguments made for the first time in a reply brief.  *See Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018).  While there are exceptions, Riley has not pointed to one.  *See id.* ("Yet we have noted exceptions.").  So we decline to consider his hearsay objection.

---

uncertain.  The allowance of standing objections in trials at law is ordinarily not to be recommended.").  We consider the one question Huffman's trial counsel objected to under the abuse-of-discretion standard.  Otherwise, because Huffman did not object to the testimony he now claims is improper, error was not preserved.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

*Id.*  Likewise, we conclude Riley only preserved error as to the question to which he objected.

**III. Conclusion**

We affirm Riley's conviction for sexual abuse in the third degree.

**AFFIRMED.**