# IN THE COURT OF APPEALS OF IOWA

No. 22-0071
Filed April 24, 2024

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**REGINALD DEMORROW LITTLE,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Johnson County, Lars G. Anderson, Judge.

 The defendant appeals his conviction for first-degree murder. **AFFIRMED.**

 Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

 Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

 Considered by Bower, C.J., Greer, J., and Carr, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

Reginald Little appeals his conviction for first-degree murder under a theory of felony murder, with the underlying felony being first-degree robbery. We find there is substantial evidence in the record to show first-degree robbery was committed by another person and Little either aided and abetted or engaged in joint criminal conduct with this person. We also find the district court did not abuse its discretion in denying Little's motion for a new trial. We affirm Little's conviction.

## I.      Background Facts & Proceedings

Evidence was presented at the jury trial in this case that would permit the jury to make the following factual findings. Kejuan Winters lived in an apartment in Iowa City with his girlfriend, Tashauna Gooden, and two of his children. Durojaiye Rosa and his girlfriend also lived in the apartment. Winters sold marijuana and sometimes had large quantities of marijuana and cash in the apartment. Rosa sold marijuana for Winters.

Rosa was friends with Little. Little purchased marijuana from Winters and Rosa. Rosa had a falling out with Winters and developed a plan with Little to rob Winters. Because Winters knew both Rosa and Little and would be able to identify both men and their guns, they decided to have a third person help with the robbery. Little enlisted Patrick Bland. Bland testified he, Rosa, and Little met at Little's apartment to plan the robbery. Rosa and Little also sent texts to each other about the planned robbery. Rosa texted, "Enough for us all to eat," meaning there was plenty of cash and marijuana at the apartment.

On April 20, 2020, Bland purchased a roll of duct tape. Little drove him to Winters's apartment. Bland was carrying a gun, and he testified Little was aware

of this. Gooden left from Winters's apartment to buy some milk. Little texted Rosa, "where the young lady go," which showed he had the apartment under observation. Bland went in the apartment, which Rosa had left unlocked, and demanded that Rosa tie himself and Winters with the duct tape. Winters fought back. Rosa took the children and hid in the bathroom. Gooden came back, and Rosa pulled her into the bathroom as well. Winters and Bland continued to tussle and Bland's gun discharged, striking Winter. Bland's facial mask had come down in the struggle. He realized Winters would be able later to identify him, so he shot Winters several more times. He then grabbed some cash and marijuana and left the apartment. Little drove Bland away from the scene. Bland stated Little took part of the proceeds from the robbery. Little left Iowa the same day as the incident.

Gooden called 911, and officers quickly responded. They found cash and marijuana on the floor in the bedroom. Also, Bland left a cell phone at the murder scene.[1] Winters died as a result of the gunshot wounds. Officers obtained text messages between Rosa and Little where they were planning the robbery. Also, surveillance video showed Bland purchasing the duct tape and Little driving to the area of Winters's apartment. Geographic data obtained from the cell phones of Rosa, Bland, and Little showed their locations, which aligned with the commission of the robbery at Winters's apartment.

Little was charged with murder in the first degree under a theory of felony murder, with the felony being robbery in the first degree. Following the trial, the jury found him guilty of first-degree murder. Little filed a motion for new trial,

---

[1] The cell phone belonged to Bland's girlfriend.

claiming Bland and Rosa were not credible witnesses, as they both received plea agreements concerning their participation in Winters's murder. Little asserted his conviction was not supported by sufficient credible evidence. The court denied the motion for a new trial. Little was sentenced to life in prison. He now appeals.

## II.      Sufficiency of the Evidence

**A.**      Little contends his conviction for felony murder should be reversed because the State did not prove that there was a robbery. He points out that Gooden testified Winters usually kept about $2000 at the apartment and this is the amount of cash found by officers. He also points out that officers found over a pound of marijuana at the apartment. Little contends the State did not adequately show anything was taken from Winters's apartment.

In regard to claims challenging the sufficiency of the evidence, the Iowa Supreme Court has stated:

> Sufficiency of the evidence claims are reviewed for corrections of errors at law. In making determinations regarding the sufficiency of the evidence, we "view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to supplement that evidence." If the record contains substantial evidence to support the defendant's conviction, we will uphold a trial court's denial of a motion of acquittal. "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." Evidence can be either circumstantial or direct, or both.

*State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) (internal citations omitted). "The evidence must at least raise a fair inference of guilt and do more than raise mere suspicion, speculation, or conjecture." *State v. Soboroff*, 798 N.W.2d 1, 6 (Iowa 2011).

The jury instructions provided:

The State has charged Reginald Little with aiding and abetting Murder in the First Degree while participating in Robbery in the First Degree. The State must prove all of the following elements of Aiding and Abetting Murder in the First Degree while Participating in Robbery in the First Degree

1. On or about April 20, 2020, Patrick Bland shot Kejuan Winters.

2. Kejuan Winters died as a result of being shot.

3. Patrick Bland acted with malice aforethought.

4. Patrick Bland was participating in Robbery in the First Degree, a forcible felony, and was aided and abetted . . . by Reginald Little.

If the State has proved all of the elements, Reginald Little is guilty of aiding and abetting Murder in the First Degree. If the State has failed to prove any one of the elements, Reginald Little is not guilty.

The instruction for first-degree robbery provided:

. . . Robbery in the First Degree includes the following elements:

1. On or about April 20, 2020, Patrick Bland had the specific intent to commit a theft.

2. To carry out his intention or to assist in escaping from the scene, with or without the stolen property, Patrick Bland:

a. Committed an assault against Kejuan Winters and in committing the assault used or displayed a dangerous weapon in connection with the assault, OR

b. Threatened Kejuan Winters with, or purposely put Kejuan Winters in fear of immediate serious injury.

3. Patrick Bland:

a. Purposely inflicted or attempted to inflict a serious injury, OR

b. Was armed with a dangerous weapon.

Little claims there is not sufficient evidence to show Bland had the specific intent to commit a theft, or that he committed a theft. Bland testified he did not know Winters and became involved only when Little approached him with the plan to rob Winters. Bland stated Rosa told him Winters "just came back from buying a whole bunch of weed. He told me pretty much that he keeps money in there." Additionally, Rosa testified there was a plan to take marijuana and cash from

Winters's apartment. Bland brought a bag with him to take things out of the apartment. Bland testified that after he shot Winters he put "[w]eed and money" in the bag and left the apartment. The evidence shows Bland had the specific intent to commit a theft, as he knew Winters had things to take and he brought a bag in order to take those things out with him. In addition, Bland committed a theft by taking marijuana and cash from Winters's apartment. A photo in evidence taken the next day shows Bland displaying a large quantity of currency.

Little asserts that this evidence is not sufficient because neither Bland nor Rosa were credible witnesses. Rosa and Bland were not initially forthcoming with officers about their involvement in the offense. Rosa was charged with felony murder and entered into a plea agreement where he would receive a sentence of fifty years in prison with a mandatory minimum of seventeen years. Bland was also charged with felony murder and had a plea agreement where he would receive a sentence of sixty years in prison with a mandatory minimum of twenty years. As part of these plea agreements, they were required to give truthful testimony in Little's trial.

"[I]t is the jury's function to determine the credibility of a witness." *State v. Brown*, 996 N.W.2d 691, 696 (Iowa 2023) (citation omitted). "It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (citation omitted). The jury is free to accept certain evidence and reject other evidence. *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005).

Here, the jury found Bland's and Rosa's testimony about the circumstances of the robbery at Winters's apartment to be credible. We find there is sufficient evidence in the record to support the jury's finding that Bland had the specific intent to commit a theft and also that he committed a theft.

**B.** Little contends there is insufficient evidence to show he aided and abetted in the robbery, or that he engaged in joint criminal conduct. Little states that although he was in the apartment parking lot at the time of the robbery, this does not show he was involved in the robbery. He states he could have been there to purchase marijuana, as he had done several times in the past.

The jury instructions stated:

"Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

For the offense of first-degree robbery, the jury was instructed the State needed to prove Little had a specific intent to commit a theft or he "'aided and abetted' with the knowledge the others who directly committed the crime had such specific intent."

For joint criminal conduct, the State needed to prove:

1. Reginald Little acted together with at least one other person.
2. Reginald Little and the other person or persons knowingly participated in the crime of Robbery in the First Degree . . . .
3. While furthering the crime of Robbery in the First Degree, the other person or persons committed the different crime of Murder . . . .

4. The Defendant could have reasonably expected that the different crime of Murder would be committed in furtherance of the crime of Robbery in the First Degree.

Rosa testified he and Little came up with a plan to rob Winters, and text messages between the two support this testimony. Rosa stated Little agreed to find a person who would go into the apartment to rob Winters. Rosa and Little did not want to commit the robbery themselves because Winters knew them. Bland testified that he was approached by Little to rob Winters. Rosa and Bland did not know each other; Little knew Bland because they lived in the same apartment complex. Bland stated he, Little, and Rosa met in Little's apartment to plan the robbery.

Bland testified Little drove him to Winters's apartment. Bland had a gun, and he stated Little was aware he was carrying a gun. Rosa also stated he understood a gun would be involved, asking, "How else will you rob somebody?" Rosa testified he and Little had an understanding that the person going into the apartment would have a gun.

Little was waiting for Bland in the vehicle when Bland came out of the apartment. Bland testified he had the marijuana and cash out of the bag in his apartment when Little came over and took part of the proceeds. Jordan Hogan, an associate of Little's, testified that after the robbery Little had "[a] few thousand" dollars. According to Hogan, Little said he did not want to spend the money because "they smelled like weed and that he would have to wash them."

There is evidence in the record to show Little aided and abetted by knowingly agreeing to the robbery and actively participating by selecting Bland to be the person to go in the apartment and then driving Bland to the scene of the

robbery. Little's conduct after the robbery, driving Bland away from the area and obtaining part of the spoils, can also be considered as it tends to prove Little's earlier participation. Furthermore, there was evidence Little had the specific intent that a theft would be committed, and he aided and abetted with the knowledge that Rosa and Bland had the specific intent to commit a theft.

On the issue of joint criminal conduct, the evidence shows Little acted together with Rosa and Bland, and the three of them knowingly participated in the offense of first-degree robbery. While furthering the crime of first-degree robbery, Bland committed murder. The jury could find Little reasonably expected that murder might be committed in the furtherance of the crime of first-degree robbery, as he was aware Bland had a gun and intended to forcibly take Winters's property.

We conclude there is sufficient evidence in the record to support the jury's finding that Little committed felony murder by aiding and abetting in the offense or by joint criminal conduct. Again, it was for the jury to determine the credibility of the testimony of Rosa, Bland, and Hogan.

### III. Motion for New Trial

Little asserts the district court should have granted his motion for a new trial. He claims the verdict was contrary to law and was a miscarriage of justice because Rosa, Bland, and Hogan were not credible witnesses.

A new trial may be granted if the verdict is contrary to the weight of the evidence. *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998). On a motion for new trial, the court "may weigh the evidence and consider the credibility of witnesses." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (citation omitted). The district court has broad discretion in considering a motion for new trial. *Id.*

"On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 203.

The district court stated:

> In this case after weighing the evidence and considering the credibility, the court finds that there is a greater amount of credible evidence that supports the verdict in this case under both theories advanced by the State.
>
> Certainly, as noted by Mr. Little in his motion, there were some inconsistencies and contradictions. But in observing Mr. Bland and Mr. Rosa and Mr. Hogan, those are the witnesses that Mr. Little chiefly complains about as far as their—or takes issue with as far as their credibility. The court found them to be overall credible. Their testimony implicates Mr. Little—or at least the testimony of Mr. Rosa and Mr. Bland implicates Mr. Little in the planning and—of the robbery, and that testimony is corroborated, as indicated by the State, by video surveillance—or surveillance videos, text messages, and location data.
>
> Mr. Little sent texts implicating himself in the planning of the robbery. There's location data and text messages that indicate he was closely—or was watching the apartment of Kejuan Winters the morning that Mr. Winters was shot. And there's also evidence from Mr. Hogan, supported by video evidence and other evidence, which suggests that Mr. Little left town in a hurry under suspicious circumstances immediately after the events that led to the death of Mr. Winters.
>
> So in sum, I do believe that there is a greater weight of evidence that supports the verdict in this case. And so Mr. Little's motion for new trial is denied, and we will proceed to sentencing.

We conclude Little has not shown the district court abused its discretion in ruling on his motion for new trial. The court did not "exercise[ ] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See id.* at 202. The court carefully considered the weight of the evidence and explained why it found the testimony of Rosa, Bland, and Hogan to be credible, despite some inconsistencies in their testimony, including their earlier statements to the police.

We affirm Little's conviction.

**AFFIRMED.**